TROY LAUNDRY MACH. CO. et al. v. AP REES et al.

(Circuit Court of Appeals, Second Circuit. April 22, 1895.)

No. 114.

1. PATENTS—WHAT CONSTITUTES INVENTION.
    There is no invention in producing an ironing machine having a heated hard roller and two soft-pressure rollers with parallel lines of contact, some distance apart, so as to form an enlarged ironing surface upon that part of the fabric stretched between them; it appearing that there were old ironing machines having a hard roller and one soft-pressure roller, and other old machines having a large heated roller with three small hard rollers disposed upon its surface, with parallel lines of contact.

2. SAME—IRONING MACHINES.
    The Baldwin patent, No. 204,701, for an improved ironing machine, *held* void as to its first and second claims for want of patentable invention.

Appeal from the Circuit Court of the United States for the Southern District of New York.

This was a bill by the Troy Laundry Machinery Company and another against William Ap Rees and another, for infringement of the first and second claims of letters patent No. 204,701, issued June 11, 1878, to James F. Baldwin, for an improved mangle or ironing machine. The circuit court dismissed the bill for want of patentable novelty in the combination. Complainants appeal.

Esek Cowen, for appellants.

Robert H. Parkinson, for appellees.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge.    Prior to Baldwin's invention, an apparatus called the "French" ironer was commonly used, which consisted essentially of a heated cylinder and a stationary steam-heated box, having a large concave surface adapted to the periphery of the cylinder.    The fabric to be ironed passed between the stationary box and the cylinder.    The machine was slow in operation, had an extended ironing surface, and the friction wrinkled the fabric. Other machines had a hard, hot, ironing roll, and one or more cold or heated hard-pressure rolls, but the objection to this class of machines was that if the articles to be ironed had seams or hems or buttons, or were of unequal thickness, the inequalities were torn or crushed between the unyielding surfaces.    The devices described in the Taylor & Cohn patent, No. 97,245, dated November 23, 1869, and in the Shafer patent, No. 21,450, dated September 7, 1858, are examples of this class.    A heated hard roll, with an elastic pressure roll, thus utilizing the ironing board of the laundress, was also used, which prevented the destructive action of the hard rolls.    An example of such a machine is found in letters patent to Frank A. Desloge, No. 91,095, dated June 8, 1869.    The patentee says in his specification that the objection to pre-existing ironers with elastic rolls is that "the point of contact between the polishing and elastic feed or pressure roll is only a single line, of such limited width that practically little ironing surface is obtained, and the machine, in effect, is simply a heated mangle."    He further says that the object of his invention was to combine the advantages of the heated polishing and soft-pressure rolls and the extended ironing surface of the French machine, and he does this by the use of a single heated polishing roll, and two or more pressure rolls having an elastic surface.    These pressure rolls are at a little distance from each other, and bear upon the heated cylinder in parallel lines, so that they retain the articles in contact with quite a large intermediate ironing surface.

The first two claims of the patent are as follows:

"(1) The within-described improvement in ironing, consisting in subjecting the articles to the action of a heated cylinder and elastic-faced rolls, which bear upon the cylinder on parallel lines, $y$, $y$, and retain the articles as they pass between said lines in contact with the intermediate heated ironing face, substantially as set forth.

"(2) The combination of the heated cylinder $a$ and elastic-faced rolls, $d$, $d''$, having parallel points of contact with the cylinder, and operating to stretch the goods over the ironing surface between said points, as set forth."

The circuit court, in discussing the validity of the first claim, said that, prior to the date of the Baldwin invention, it was an old device to make an elastic-faced roll, "in order that at every line of contact there should be one hard and one yielding surface."    The correctness of this statement is admitted by the defendants' counsel, who also concedes that, if the Baldwin improvement merely consisted in double elastic rolls or two pairs of such rolls, it would be merely a repetition of the Desloge invention.    But he says the gist of the Baldwin invention was the introduction between two elastic-faced rolls of the intermediate surface of a large smooth-faced heated ironing roller, over which intermediate surface the cloth was car-

ried, so that a large portion of the surface of the ironing roller was used for ironing purposes. He relies upon the use of this space for ironing, as a patentable advantage over the use of a narrower space, or merely the line of contact between the pressure and the heated roller, so that the question under the first claim, is whether this enlarged ironing surface, and the holding of the article to be ironed throughout the extent of surface between the parallel lines of the elastic roller, was a patentable invention. A single ironing heated hard roller and a single elastic roller were old, and the importance of the use of the yielding ironing board of the laundress was therefore well known. A single hard-heated roller and two or more hot or cold hard-pressure rollers were old, and there was no invention in putting an elastic jacket upon the pressure rollers.

The ironing surface of a single-heated roller, and the pressure surface of two or more hard rollers, had been abundantly shown, and the single point which was before the patentee in the improvement of the first claim was how to place his double-pressure rollers to the best advantage,—whether to have two or three, or to be content with two, and, if two only were used, how near together or how far apart they were to be placed. But the expert for the complainant, as well as its counsel, lays great stress upon the fact that in the creation of a large area of ironing surfaces, by means of the separated pressure rolls, there was a departure from the principle of pre-existing machines.

In view of the Leonard machine, which was made in 1873 or 1874, and was in actual use and did "fairly good work" on sheets and similar articles, and which consisted of a large steam cylinder about 12 or 14 inches in diameter, with six small 3-inch hard rollers arranged upon the outer surface, placed within about 1 inch of each other, and so constructed that a part of them could be taken out and have the remaining ones further apart, there does not seem to have been a substantial newness of principle in the Baldwin machine. Leonard had the idea of holding the article upon a large area of heated surface, but the exact mechanical relations which the cylinders should bear to each other could probably have been improved. Inasmuch as the patentee had before his eye the old heating hard roller, and the old soft roller, and the old hard-pressure rollers in pairs or in series, and as it is conceded that no genius was required in the substitution of soft for hard rollers, the particular spot in which the two or more elastic rollers should be placed, in order to produce the most efficient contact with the ironing surface, was the office of the mechanic. The reason for the use of two or more, rather than of one, was obvious; and it was also obvious that they should not be placed side by side, but should be separated. The character of mind which was required for this part of the improvement has been overestimated. The selection of the proper size of the different rollers, and of their proper location with reference to each other, was a work requiring skill, but it was the skill of the mechanic, and not of the inventor.

The appellant next insists that the second claim describes, as a part of the invention, that the elastic-faced rolls operate to stretch

the articles over the ironing surface between the parallel points of contact with the cylinder; that the means for stretching consisted in the increased diameter of one of the small rolls, whereby the speed of the rolls was differentiated; and that the stretching feature gave patentability to the claim. While the means by which stretching is produced are not pointed out in the specification, it is said that any mechanic would know that it could be effected by giving an increased diameter to one roll, or to make one roll revolve more rapidly than the other. The history of the Baldwin patent does not favor this construction of the claim. The stretching suggestion was introduced in the last amendment which was presented to the patent office. A patent for means by which a differential velocity was given to the pressure rolls was applied for, as a new invention, by Baldwin, on April 15, 1880, and was granted February 14, 1882. It is thus apparent that the rolls in the machine of the first patent were not of different diameter, and had the same velocity. The validity of the second patent was examined in the suit of Baldwin v. Haynes, 28 Fed. 99, in the First circuit, and was decided by Judge Colt adversely to it, as appears from his opinion offered in evidence by the complainant, because the improvement simply applied an old and obvious remedy to the defect of the mangle of the first patent. Whatever stretching there was in the first Baldwin machine was produced by the action of two elastic-faced rolls of the same size, and moving at the same rate of speed, upon the article, and, as has already been said, the combination of hard and elastic rolls constituted no invention. The differential speed of the pressure rolls seems to have been a familiar idea. It is found in the unpatented Leonard machine, in which the last small roll was speeded faster than the others, in order to stretch the articles. The decree of the circuit court is affirmed, with costs of this court.