## ROSS v. DOWDEN MFG. CO.

### (Circuit Court of Appeals, Eighth Circuit. November 4, 1907.)

### No. 2,561.

PATENTS—INVENTION—POTATO HARVESTER.

The Ross patent, No. 640,816, for an attachment to potato harvesters, consisting of an auxiliary conveyer having a hinged connection with the frame of the harvester and means for adjusting it vertically, its purpose being to assist in cleaning the potatoes before they are dropped upon the ground, is void for lack of invention; the device being the same in principle as the primary conveyer to which it is supplementary and adjusted by means well known in the mechanic arts, the production of which required no more than mechanical skill.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

Wallace R. Lane and Robert H. Haines, for appellant.

William B. Brown and John I. Dille (Brown & Dille, on the brief), for appellee.

Before VAN DEVANTER and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This is an appeal from a decree entered by the Circuit Court for the Southern District of Iowa dismissing a bill brought for an alleged infringement of patent No. 640,816, granted to George M. Ross, January 9, 1900, for an attachment to potato harvesters. Claim 1 of the patent, alleged to have been infringed by the defendant, reads as follows:

"1. In combination with a potato harvester having a conveyer to move upwardly and rearwardly and carry earth and potatoes and discharge them from the rear of the conveyer, an auxiliary vertically adjustable conveyer having a hinged connection with the frame of the machine and composed of a series of transversely extended bars adapted to permit the lumps of earth to be broken up as they fall thereon and to pass through said auxiliary conveyer and to carry the potatoes to a point of discharge in the rear so that they will fall on top of the earth, and means for raising and lowering the rear end of the auxiliary conveyer in the manner set forth for the purposes stated."

The invention, as described in the specifications—

"relates to that class of potato harvesters in which the potatoes are conveyed over a sieve-like carrier which separates them from the earth and which are dropped at the rear of the machine; and it consists of an attachment which may be applied to potato harvesters of this class—such, for example, as the harvester illustrated in the patent issued to Ashford T. Dowden, February 1, 1887, and numbered 357,119. * * * The object of this invention is to provide means for carrying the potatoes to a point some distance in the rear of the endless carrier, so that the broken clods and other matter may first fall to the ground and then the potatoes be dropped on top of the ground, so that they may be readily seen and not be buried by said matter."

The construction, omitting the numerals, is thus described by the patentee:

"My attachments comprise two flat supporting arms fixed to the sides of the machine-frame to project downwardly and rearwardly, one of them having near its central portion a slot, in which an idler is adjustably clamped. At

the lower end of each of these side pieces a shaft is rotatably mounted, and on one end of this shaft is, a sprocket-wheel, having a sprocket chain passed under it, around the said idler and over a sprocket-wheel, fixed to the shaft (referring to the shaft on the harvester). Hence, this shaft will be constantly rotated during the advance of the machine. A rectangular frame is pivoted at its forward lower corner to the said shaft, and said frame extends straight rearwardly. A mating frame is pivoted at the opposite side of the machine, and in the rear lower corner of this frame a shaft is fixed, which serves to clamp the rear ends of the said frames together and which provides a bearing for the sprocket-wheels which are rotatably mounted thereon. An endless conveyer, composed of a series of transversely-extended rods having integral hooks extending at right angles from their ends and interlocked, is passed over the said sprockets and also over the sprockets fixed to the shaft. Thus an auxiliary conveyer is provided to extend from a point in the rear of the conveyer and a considerable distance rearwardly to the point of discharge. Means are provided for raising and lowering this frame, so that when the front end of the harvester is elevated the said conveyer will not rest upon the ground. These means comprise a lever, fulcrumed to a part of the machine-frame and extended straight upwardly at one side of the driver's seat. Attached to this lever is a gravity-actuated pawl, which is operated by the bell-crank lever, adjacent to the handle of the lever. A segmental-rack is fixed to the machine-frame adjacent to the pawl. A rod is adjustably connected with the lever and attached to the forward upper corner of the frame. Hence, when the said lever is moved forwardly the rear lower corner of the frame will necessarily be raised."

It will be noticed that the claim in controversy calls for a conveyer to move upwardly and rearwardly, having a hinged connection with the frame of the machine, composed of a series of transversely-extended bars adapted to permit the lumps of earth to be broken up as they fall thereon and to pass through the conveyer and to carry the potatoes to a point of discharge in the rear, so that they will fall on top of the earth. It also calls for a means for raising and lowering the rear end of the conveyer, "in manner set forth for the purposes stated." When we refer back to the specifications, we find that these means for raising and lowering the conveyer are two rectangular mating-frames, a lever, a connecting rod attached to the lever having an arm at the opposite end to the lever, and a pivotal mounting of each mating frame at its lower front corner at a point adjacent to the ground.

The testimony shows that the conveyer itself is identical in every particular with the conveyer on the Dowden harvester, referred to in complainant's patent, which has been in use for many years. It is attached in the same way and driven by the same driving wheels, using the same conveyer chain, runs in the same manner and in the same direction and is used for the same purpose, namely, to separate the dirt from the potatoes, so that it cannot be said that there is anything new in the conveyer itself. Hence, if there is any infringement, it must be in the method of connecting the rear conveyer with the machine, or the method of adjusting it.

Complainant's device has a hinged connection with the main machine, or harvester, and the means for raising and lowering the conveyer, set forth in the specifications, consist of the frame, rods, the arch-bars, the lever, carrying-pawl, and rack adapted to engage the pawl and means of releasing the pawl; while in the Dowden device, complained of, the rear conveyer is supported on the main machine by bosses, and is fastened in place by bolts extending through the main

machine-frame and by aid of cast iron washers held in position, then by rods extending from the seat arch to near the rear end of the conveyer and there fastened by bolts to the side plates of the conveyer. Both ends being bolted, the rods act as a support for holding up the conveyer. These rods in connection with the uprights form trusses and make a rigid and firm support for the auxiliary carrier. It will thus be seen that no lever or means are provided for raising and lowering the Dowden device while the machine is in operation. It is contended, however, on behalf of complainant, that the device disclosed by the Ross patent has all the elements of the claim in controversy; that it comprehends broadly an old element, namely, the main elevating conveyer, the new elevating or endless carrier conveyer of the type referred to in the claim, and also two forms of mechanism by which the raising and lowering of the rear conveyer is effected—first, the lever and its attachments; second, the use of adjustable rods, with holes in the upper ends of the rods engaged by bolts on the harvester, and by adjusting which the rear conveyer can be raised or lowered; that as to the adjustable feature of his device he is entitled to a liberal construction of his claim. There can be no doubt but that the complainant's device is a patented combination, and, as such, we think, it falls within the rule announced in the Cornplanter Case, 90 U. S. 218, 23 L. Ed. 161, in which it is said that the words, " 'substantially as and for the purpose set forth,' throws us back to the specification for a qualification of the claim, and the several elements of which the combination is composed. * * * The claim thus limited is considerably narrowed in its operation. It is substantially for a combination of the material parts of the entire machine, and no one can be said to infringe it who does not use the entire combination."

In the case of Erie Rubber Co. v. American Dunlop Tire Co., 70 Fed. 58, 16 C. C. A. 632, the court said:

"And here it may be remarked that, in applying the doctrine of equivalents, a distinction is made between inventions of specific devices and inventions of combinations. In a simple invention the range of equivalents is much wider than in a combination. In the former a change which would be held to be a substitution of equivalents may in the latter be considered to be an introduction of a new idea of means."

Applying these rules to the case before us, we think it may well be doubted whether there was any infringement of the Ross device.

However this may be, we prefer to rest our decision upon the ground that there is no invention in complainant's device. While it probably cleans the potatoes a little better, by reason of the fact that the potatoes have to travel further before being deposited upon the ground, yet the process by which it is operated is substantially the same as the conveyer in the harvester itself and other devices well known to the art, long prior to the date of complainant's patent. Mr. Carter, complainant's expert, testified that:

"In this connection it will also be remembered that lever, pawl, and ratchet devices, such as the Ross patent more specifically discloses, are commonly employed in the agricultural implement art, as a convenient means of obtaining adjustments of all sorts, while the expedient of employing a series of holes of which any one may be engaged by a bolt is also common in this art where adjustability is desired. So that the substitution of the one for the other or the

employment of both together or either separately ·can scarcely be regarded as more than a matter of ordinary mechanical skill on the part of the builder of the machine. Nor would the substitution or selection of any other suitable or well-known adjusting device or adjustable connection in similar relation require the exercise of anything more than such mechanical skill."

As already suggested, in the adjustment of this conveyer, complainant has simply taken the endless chain transverse-rod conveyer extending rearwardly and upwardly of the Dowden harvester and applied to it an adjustable feature in common use by every mechanic, and also described in the patent of the Hoover conveyer and the Reuther conveyer for potato harvesters offered in evidence, and, combining them, has made his conveyer. That is, he has taken the Dowden machine and auxiliary conveyer and substituted the vertical feature of the other machine mentioned for that used by Dowden, and has taken the transverse rods used in the Dowden harvester and substituted them for the longitudinal rods of the Dowden rear conveyer. We do not think this constitutes invention. As was said by Judge Philips in the case of ·Tiemann v. Kraatz, 85 Fed. 439, 29 C. C. A. 259, after reviewing the cases :

"All are agreed that there must be originality of conception, which springs spontaneously, and not 'by a necessity of human reasoning in the minds of those who became acquainted with circumstances with which they had to deal.' It results logically from this idea that it is not invention to produce a device which a skilled mechanic, upon suggestion of what was required, would produce, especially so when he is aided in the work of construction by devices and appliances in practical use pregnant with suggestions of larger and better use. In this day of increasing demand for new and enlarged mechanical appliances, the first natural result is the production of a large class of skilled and experienced mechanics and artisans ; and, second, a more studious and constant development in applied mechanics. And, as such advance plainly points out to the attentive and assiduous workman the natural, larger, practical adaptation of existing, known mechanical devices, to invest each one of these developments with the immunity of a monopolizing patent would not only be a perversion of the term 'invention,' but would utterly extinguish the doctrine of mechanical equivalents."

The rear conveyer of complainant's patent is, as we view it, nothing more than an extension or continuation of the conveyer on the Dowden harvester, and the only difference between the method of vertically adjusting the conveyer (leaving out of consideration the lever) between the Ross device and the Dowden device here complained of is that the Ross device is adjusted by means of holes in the rods, supporting the frame attached to the main harvester, engaged by bolts on the harvester, while in the Dowden device the truss, or rods, supporting the conveyer are connected at the rear end of the frame by bolts which can be placed in different holes in the side plates. It is denied by the defendant that these holes at the rear of defendant's conveyer are used for the purpose of vertical adjustment; but, conceding that they can be and are so used, we do not think that either method involves · patentable invention. Where adjustability is desired, such means as a series of holes in the supporting rod of a carrier, any one of which may be engaged by a bolt on the main machine, would at once suggest itself to a skilled mechanic. Such means had been used in the agricultural implement art, where a rear conveyer was required,

long prior to the date of the Ross patent, such, for instance, as the rear conveyer or straw-stacker, attached to threshing machines and other agricultural implements. In our judgment "he produced no new result, or any improved method of producing the old result." Voigtmann v. Weis & Ridge Cornice Co., 148 Fed. 848, 78 C. C. A. 538. In Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566, it is said:

"But a mere carrying forward or new or more extended application of the original thought, a change only in form, proportions or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent. These rules apply alike, whether what preceded was covered by a patent or rested only in public knowledge and use. In neither case can there be an invasion of such domain and an appropriation of anything found there. In one case everything belongs to the prior patentee, in the other, to the public at large."

It is contended by the complainant that the sale of Dowden harvesters greatly increased as a result of the use of the rear conveyer, and there is evidence in the record tending to support his contention; but, as we view the case, this argument avails nothing to the complainant, because no extent of use can supply the want of actual invention.

The decree dismissing the bill is affirmed.