## BOSS MFG. CO. v. THOMAS.†

### (Circuit Court of Appeals, Eighth Circuit. October 11, 1910.)

### No. 3,303.

1. PATENTS (§ 168*)—CONSTRUCTION—PROCEEDINGS IN PATENT OFFICE.

When an inventor seeking a patent for a broad claim acquiesces in the rejection of the same by the Patent Office and substitutes therefor a narrower one which is allowed, such claim must be construed with reference to the rejected claim and the prior state of the art, and will not be so interpreted as to cover either what was rejected by the Patent Office or disclosed by prior devices.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 243½, 244; Dec. Dig. § 168.*]

2. PATENTS (§ 22*)—INVENTION—SUBSTITUTION OF EQUIVALENTS.

The use in a patented device of a screw to fasten together two parts instead of a rivet used in prior devices, for the purpose of making them more readily detachable, is but the substitution of a well-known mechanical equivalent and does not amount to invention.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 24; Dec. Dig. § 22.*]

3. PATENTS (§ 35*)—EVIDENCE OF INVENTION—UTILITY AND EXTENT OF USE.

The fact that a patented article has gone into extensive or general use is evidence of its utility, and in doubtful cases may be considered as evidence of invention, but is not conclusive, and, where there is no invention, the extent of the use is immaterial.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. § 35.*

Utility, extent of use, and commercial success as evidence of invention, see note to Doig v. Morgan Mach. Co., 59 C. C. A. 620.]

4. PATENTS (§ 328*)—NOVELTY—CORN-HUSKER.

The Walter patent, No. 634,923, for a corn-husker, is void for lack of patentable novelty.

5. PATENTS (§ 328*)—ANTICIPATION—CORN-HUSKER.

The Walter patent, No. 810,098, for a corn-husker, claim 9, is void for anticipation.

Appeal from the Circuit Court of the United States for the Southern District of Iowa.

Suit in equity by the Boss Manufacturing Company against Robert N. Thomas. Decree for defendant, and complainant appeals. Affirmed.

L. S. Bacon and C. C. Linthicum, for appellant.

William Nevarre Cromwell, C. E. Doyle, and D. W. Higbee (C. A. Snow & Co., of counsel), for appellee.

Before HOOK and ADAMS, Circuit Judges, and REED, District Judge.

REED, District Judge. This suit was brought by appellant to restrain the alleged infringement by defendant of claims 1, 2, and 3 of patent No. 634,923, issued to Theo. P. Walter, October 17, 1899, and claim 9 of patent No. 810,098, issued to the same Theo. P. Walter,

January 16, 1906, the application for which was filed March 28, 1905, both for improvements in corn-huskers. The defendant denied the infringement, alleged that both of the patents were anticipated by prior patents and devices set forth in the answer, and were lacking in patentable novelty and void. The Circuit Court dismissed the bill, and complainant appeals.

In the specification of the first patent, or patent No. 634,923, the patentee says:

"The object of the present invention is to improve the construction of corn-huskers, and to provide a simple, inexpensive, and efficient device adapted to fit the hand of the operator, and prevent the same from being crippled; and a further object * * * is to provide a corn-husker having an adjustable hook adapted to be arranged in different positions to suit the hand of the operator, and capable of being readily replaced when worn. The invention consists in the construction and novel combination and arrangement of parts hereinafter fully described, illustrated, and pointed out in the claims hereto appended."

Claim 1 of this patent is as follows:

"A corn-husker provided in its body portion with a series of openings, in combination with a husking-hook adapted to be fitted into any one of said openings, and retaining means for said hook.

"2. A corn-husker comprising a body portion provided with a transverse series of slots and an adjustable hook adapted to be arranged in any of the slots and provided at its shank with an arm, extending in the opposite direction from the engaging portion of the hook and secured to the inner face of the said body portion, substantially as described.

"3. A corn-husker comprising a body portion provided at intervals with slots, and a hook capable of adjustment on the body portion and provided at its shank with an arm extending through one of the slots and detachably secured to the inner face of the body portion, substantially as described."

The patentee at first claimed as his invention the adjustability of the hook upon the plate or body of the husker. This claim was rejected by the Patent Office upon reference to a number of prior patents. The patentee acquiesced in this rejection, canceled the original claim 1, slightly amended claims 3 and 4, and presented two new claims, one of which is claim 1 of the patent as above quoted. The other is as follows:

"2. A hand corn-husking implement having in combination therewith a husking-hook and means whereby the position of said hook may be shifted from one point of the body of the implement to another."

The Patent Office rejected this claim upon reference to the patent to Schmeltzer, No. 146,842, January 27, 1874, and said that claim 1 "may possibly be allowed upon its specific construction." The patentee then amended his new claim 2, by inserting the word "separable" before the words "husking-hook." The claim as so amended was again rejected upon reference to the Brown patent, No. 57,283, August 21, 1866; Schmeltzer, No. 146,842, January 27, 1874; Hagen, No. 259,683, June 20, 1882; Burton, No. 626,854, June 13, 1899. The patentee again acquiesced and presented claims 2 and 3 of the patent as finally allowed and as above set forth. It thus appears that the patentee acquiesced in the repeated rejection by the Patent Office of his original and amended claims for an adjustable hook upon the plate or

body of the husker, and accepted the narrower claims of the patent which are for the specific construction or method of attaching the hook to the body of the plate as described. It is settled by the repeated decisions of the Supreme Court and of this court that, when an inventor seeking a patent for a broad claim acquiesces in a rejection of the same by the Patent Office and substitutes therefor a narrower one, he will not be heard to insist that the construction of the claim allowed shall include that which has been rejected; also, that a claim as allowed under such circumstances must be construed with reference to the rejected claims and the prior state of the art, and will not be so interpreted as to cover either what was rejected by the Patent Office or disclosed by prior devices. Corbin Cabinet Lock Co. v. Eagle Lock Co., 150 U. S. 38–40, 14 Sup. Ct. 28, 37 L. Ed. 989; Computing Scale Co. v. Automatic Scale Co., 204 U. S. 609–617, 27 Sup. Ct. 307, 51 L. Ed. 645; National Hollow B. B. Co. v. Interchangeable B. B. Co., 106 Fed. 693–714, 45 C. C. A. 544; St. Louis Street Flushing Mach. Co. v. American Street Flushing Mach. Co., 156 Fed. 574–581, 84 C. C. A. 340.

The patentee and the complainant as his assignee are, therefore, each estopped from insisting that the patent as allowed covers the broad claim for a hook adjustable upon the body of the plate as was originally claimed. Each of the claims 1, 2, and 3, therefore, must be limited to the specific method of attaching the hook to the body of the husker by means of an arm or shank fitted into an opening or slot in the plate. Is it a patentable novelty to so attach the hook, or is it shown by the prior devices? The standard husker, a device not patented, but which was put in evidence by the defendant, is conclusively shown to have been in public use since 1883, 15 years before the application for this patent was filed. That device is the same as that of this patent, unless the method or means of attaching its hook to the plate distinguishes it from the device of the patent. In referring to these two devices, the standard husker, and the husker of the patent, the complainant's expert said:

"So far as the underlying spirit or idea involved in these two devices is concerned, I believe it may be properly said that the difference between the two resides in the facts that the standard husker is a fixed and permanent structure while the Walter husker is a detachable and adjustable structure. Thus broadly considered it may fairly be said that this is the only difference."

In the standard husker the hook is attached to the plate by means of a rivet, thus making it what the complainant's expert calls "a permanent structure," while in the husker of the patent an arm or shank is fitted into an opening or slot in the body of the plate and held in position by means of a screw or its equivalent, whereby it may be more readily detached and replaced, or readjusted when it is necessary for any reason to do so. But we have seen that the claim for an adjustable hook was surrendered by the patentee, and for it he substituted and finally accepted in lieu thereof the narrower claim for the specific construction or method of attaching the hook to the plate as described. But admitting that the claims as finally allowed are for an adjustable hook upon the body of the plate "to meet the whim of the user," as

urged in behalf of complainant, the use of the screw or its equivalent as a means of attaching the hook to the plate instead of the rivet, whereby the hook may be the more readily detached and replaced when it may be necessary or desirable to do so, would readily suggest itself to any one skilled in the art of using or constructing such devices; and the extension of the lug of the standard husker through the plate, turning it in an opposite direction, and attaching it by means of the screw or its equivalent instead of the rivet, does not in our opinion arise to the dignity of invention. Richards v. Chase Elevator Co., 158 U. S. 299–302, 15 Sup. Ct. 831, 39 L. Ed. 991; Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485–493, 20 Sup. Ct. 708, 44 L. Ed. 856; Ross v. Dowden Mfg. Co., 157 Fed. 681–685, 85 C. C. A. 449.

It is a matter of common knowledge that the use of the screw, the nut and bolt, and the rivet as a means of uniting, or attaching together two or more pieces or parts of material, were well known, and the mechanical equivalents of each other, and so used long before the first Walter patent. Peters v. Hansen, 129 U. S. 541–550, 551, 9 Sup. Ct. 393, 32 L. Ed. 742.

The complainant urges upon us the extensive use of the husker of the patent as claimed by him, as evidence of the patentability of that husker. In doubtful cases the fact that a patented article has gone into extensive or general use is evidence of its utility; but that is by no means conclusive of its patentability. When there is no invention, the extent of the use is a matter of no importance. McClain v. Ortmayer, 141 U. S. 419–429, 12 Sup. Ct. 76, 35 L. Ed. 800; Adams v. Bellaire Stamping Co., 141 U. S. 539–542, 12 Sup. Ct. 66, 35 L. Ed. 849; Duer v. Corbin Cabinet Lock Co., 149 U. S. 216–223, 224, 13 Sup. Ct. 850, 37 L. Ed. 707.

The conclusion therefore is that the first Walter patent, or patent No. 634,923, is lacking in patentable novelty and void.

Claim 9 of the second patent in suit, or patent No. 810,098, the application for which was filed March 28, 1905, is as follows:

"In a corn-husker, the combination with a base member having an opening, of a husk-engaging member comprising a body portion that rests against the base member, said husk-engaging member having a longitudinally-disposed offset retaining-lug that projects beyond one end of the body portion and is movable through the opening into and out of engagement with the opposite side of the base member to that against which the body portion rests, and having at its other end an outstanding hook that extends toward the end having the lug, and a holding device connecting the base member and the body portion between the retaining-lug and the hook."

The distinguishing feature of this claim, as illustrated by the drawings of the patent, is a hook in combination with the plate or body of the husker, in which plate is a series of openings or perforations so arranged in relation to each other as to permit of the positioning of the hook upon the plate at different angles to the palm of the hand upon which the husker is to be used. If this combination of the perforations, the plate, and the husking-hook has in it any element of patentability, it is clearly shown in the prior huskers of Kees, Clark, and Rate; each of which the evidence shows beyond any doubt was

in public use more than two years prior to the filing of the application for this patent.

It follows that the bill was rightly dismissed as to both patents. The decree of the Circuit Court is therefore affirmed.

NOTE.—The following is the opinion of Smith McPherson, District Judge, in the court below:

SMITH McPHERSON, District Judge. This case is by a bill in equity to enjoin the alleged infringement of two certain letters patent, No. 634,923, dated October 17, 1899, and No. 810,098, dated January 16, 1906, the subject of which is "corn huskers," and for an accounting. The patentee was T. P. Walter, and complainant is the owner thereof, under which it manufactures the huskers at Kewanee, Ill., and sells the same. Defendant is likewise a patentee for corn huskers, and manufactures the same at Shenandoah, Iowa, and sells the same. The device of each is useful, and commercially is valuable.

The evidence shows, and without this it is a matter of common knowledge, and the courts will judicially notice the fact, that corn-husking devices for use on the hand of a man have been in general use for a great many years. A piece of metal, bone, or hardwood four to six inches in length, with the outward end pointed, and the piece strapped to the second finger, for a great many years was, and still is, in general use. A third of a century and more ago a semi-mitten of leather came into use. This had a metal plate for the palm of the hand, on which was a metal point, some of these points straight, and some of them hooked. This partial mitten was strapped to the hand. With such devices the operator could tear open the husk of the corn, and then he would break the butt of the ear from the husk. By any of the devices he could husk more corn, and save his fingers from wear, lacerations, and bruises. It is claimed that one operator would want the point near the center of his hand, another at the base of the thumb, another at the ball of the thumb, and another on the side near the small finger. Again, it is claimed that the same operator part of the time would want the point at one place, and part of the time at another. As this point was riveted to the metal plate, two or more operators could not conveniently nor desirably use the same device, and the operator who desired to change the point from one part of the hand to another was compelled to have two or more devices. But, instead of having two or more devices, why not one device, with this point easily and readily adjustable and changeable from one part of the hand to another part? This occurred to many. Theretofore it had been secured by rivets. To make the change, the rivet must be driven out, new holes punched, and a new rivet put in. This required a blacksmith or other mechanic, and it took time. Then the thought occurred, instead of having one hole or slot in the plate, why not several, and instead of using a rivet, why not use a screw, to be taken out and reinserted with a jackknife or screw-driver?

This thought was carried into experiment, and of course succeeded. Is this invention, because of greater utility than the wooden "shucking peg," or the plate with a fixed point for tearing open the husk; or is it the work of a skilled mechanic without the exercise of inventive genius? That it is new and useful is true. Such, of course, is not the only test. It is a mere improvement of that which was long in use. By making holes or slots in the palm of the hand plate to the mitten, a screw instead of a rivet, the shucking peg can be pointed at different angles, and worn at different points. Changing from a rivet to a screw or bolt with a nut at one end is not invention, and it is placing the mechanics of the country on a low plane to call it invention. The argument of counsel is that it is new, and the mechanic had not brought it into being. That argument is of some weight, although it is made in all cases as the last resort, when seeking to sustain patents for improvements.

For a pioneer patent, not only is there a presumption in favor of its regularity and validity, but full recognition is given to its monopolistic features,

and the broadest and most liberal construction decreed as to its claims. All thoughtful persons unite in indorsing these things. Much of our advance in the arts and sciences has been by reason of such a policy, and it can fairly be said that the uniform holdings of the national appellate courts in "pioneer" patent cases is greatly to the credit of our country. But it does not and it should not follow, by reason of the presumption in favor of the validity of a patent, that patents for every mere improvement should be sustained, and oblige the public to pay tribute for monopolies which have but little or no merit as inventions. They have no consideration to support them. Such improvements are not covered by the constitutional provision. There is no valid contract to sustain such a monopoly? It is egotism and vanity to madness for such patentees to make claim to have a standing in the field of the arts and sciences as inventors, and that such standing must be indorsed by the courts. To reverse the motion by the addition of a cogwheel, or the crossing of a belt, is the work of a skilled workman, To change the position, or give another direction to a part of the mechanism by means of a screw or bolt, instead of a nail or rivet, is observed every day in every vocation, from the compass in the hand of the carpenter, the transom over the door, or the changing of many appliances of everyday use. There is no invention in such appliances. Such an improved corn husker was certain to follow, by the common work of the average mechanic.

The late Circuit Judge William K. Townsend, a most profound patent-law jurist, has well stated at page 396 of "Two Centuries Growth of American Law": "Accordingly, it is now settled that the production of improvements reasonably certain to have been adopted in the development of a new branch of industry opened up by invention does not entitle the producer to a monopoly. The Patent Office, however, has generally issued a patent to any one who produced a device not before known, unless it was considered reasonably clear that such device did not involve invention. Therefore, in finding a remedy for the evils above stated, the courts have held invalid a large percentage of litigated patents. This doctrine of the necessity of patentable invention as well as novelty has changed the whole face of patent litigation. The question is no longer, 'Is it new?' alone; but 'Is it such as would have occurred to a skilled mechanic without the exercise of inventive genius?' The changes in the law on this subject make the history of patent law in the United States." Although the foregoing is an excerpt from one of a series of lectures by the faculty of the Yale Law School, and not from an authoritative decision by an appellate court, yet it can be stated to be the practice, and likewise the holdings of courts which do speak with authority.

The views of this court are that both of the patents in suit, as well as the patent of the defendant urged as a defense, are invalid by reason of the lack of invention. The case of National Hollow Brake Beam Company v. Interchangeable Company (8th Circuit) 106 Fed. 707, 45 C. C. A. 544, is relied on by the complainant. But that case is not in point. The patent in that case was for an improvement, and was not a pioneer? But there was a universal demand for the improvement. For the corn husker there is but a limited demand. For a suitable car brake beam there was a demand by the master mechanics of the entire country. Repeated efforts were made to solve the proposition, all resulting in failures until the patentee solved it.

2. It would be idle to claim that a metal husking point attached to the under part of the hand by straps and plates is patentable, and such claim is not made by complainant; but it is contended that, because such metal point is readily changed and readily adjusted, such device is patentable. A great many metal point corn huskers have been covered by patents, many of them, however, not adjustable points, and are only of value as to the history and state of the art. Some of them are the Brown patent, 57,283, issued in 1866; the Hindman, 61,428, issued in 1867; the Hazen, 259,683; the Ludwig, 348,-528; the Decker, 357,523; and there are others. But there were adjustable point huskers issued prior to complainant's, one or two of which were overlooked without doubt by the Patent Office when complainant's patents were issued. The Rife patent, 608,476, issued May 24, 1898, is an adjustable one, although not perfectly so. The Schmeltzer, 146,842, issued in 1874, is an ad-

Justable and changeable point. By reason of such patents, complainant's contention is without merit.

3. The husking point of complainant's is adjustable and changeable by reason of slots; defendant's by reason of holes. If complainant has valid patents, such patents not being pioneer, but for a mere convenience or improvement, they must be given validity by the most rigid construction only; and the fact the complainant adjusts the heel to its point, as well as the center, by means of slots, while the defendant does the same thing by means of perforations, or holes, does not make a case of infringement, by reason of supposed equivalents. Ross v. Dowden (8th Circuit) 157 Fed. 681, 85 C. C. A. 449.

There will be a decree for the defendant.