SPARKS–WITHINGTON CO. v. E. A. LABORATORIES, Inc.

(District Court, E. D. New York.  January 31, 1924.)

1. Patents ⬥➱328—Sparks, No. 1,237,717, for motor ,horn, held valid and infringed.

The Sparks patent, No. 1,237,717, for a motor horn, *held* not anticipated, valid, and infringed.

2. Patents ⬥➱66—Patent granted on copending application not part. of prior art.

A patent granted on an application pending at the same time as complainant's application is not a part of the prior art.

3. Patents ⬥➱36—Commercial success evidence of invention.

That the device of complainant's patent has come into general use and supplanted prior structures is evidence of invention, in the absence of evidence that its success was due to causes other than its merits.

4. Patents ⬥➱36, 45—New result evidence of novelty and invention.

That a patented device accomplished something not before believed possible by those skilled in the art is evidence of novelty and invention.

5. Patents. ⬥➱328—Sparks, No. 1,355,283, for motor, held void for lack of invention.

The Sparks patent, No. 1,355,283, for a motor for use in connection with electric horns, claim 1, *held* void for lack of novelty and invention.

In Equity.  Suit by the Sparks-Withington Company against the E. A. Laboratories, Inc.  Decree for complainant in part, and in part for defendant.

Howard P. Denison and Eugene A. Thompson, both of 'Syracuse, N. Y., for plaintiff.

Dunn, Goodlett & Massie, of New York City (C. A. L. Massie, of New York City, of counsel), for defendant.

CAMPBELL, District Judge.  This is a suit in equity, originally brought to restrain the alleged infringement by the defendant of three patents issued by the United States Patent Office, viz.: No. 1,227,084, granted to the Sparks-Withington Company upon the application of William Sparks, dated May 22, 1917; No. 1,237,717, granted to the Sparks-Withington Company upon the application of William Sparks, dated August 21, 1917; No. 1,355,283, granted to the Sparks-Withington Company upon the application of William Sparks, dated October 12, 1920—and for damages.

The defendant interposed the answer of invalidity and noninfringement, and also by way of counterclaim alleged infringement by the plaintiff of two patents issued by the United States Patent Office, viz.: No. 1,146,773, granted to Emanuel Aufiero, dated July 13, 1915; No. 1,207,834, granted to Emanuel Aufiero, dated December 12, 1916. The plaintiff interposed the reply of invalidity and noninfringement.

Prior to the trial of this action the parties stipulated, without prejudice to bringing separate suits, that the plaintiff withdrew its patent No. 1,227,084 from this issue, and the defendant withdrew from this issue its counterclaim, based upon patents Nos. 1,146,773 and 1,207,-834.  The instant case is therefore one in which plaintiff seeks to restrain the defendant from the alleged infringement of patents Nos. 1,-

⬥➱For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

237,717 and 1,355,283, and to recover damages from the defendant for such alleged infringement; the defendant having interposed the answer of invalidity and noninfringement.

[1] The plaintiff bases the action on the one claim of patent No. 1,-237,717, which reads as follows:

"A horn comprising front and rear case sections for a diaphragm, a diaphragm having its periphery secured between said case sections and its intermediate portion free to vibrate, a wear piece on the central portion of the diaphragm, a narrow thin sheet metal strip bent in U-shape form and having its ends secured to the rear case section to form a U-shape motor case, pole pieces rigidly secured to the opposite sides of the motor case and projecting toward each other within the case, brushes carried by and within the case, an armature having its shaft journaled in the rear wall of the U-shape case and in the rear case section, a commutator on the shaft within the U-shape case, an actuator mounted on the shaft and adapted for contact with said wear piece, and a casing inclosing the U-shape case and other motor parts,"

—and on claim 1 of patent No. 1,355,283, which reads as follows:

"1. A motor comprising a U-shape sheet metal frame having oppositely disposed openings in the side walls thereof, pole pieces each comprising a central portion and a pair of studs extending from opposite ends thereof, respective studs extended through the openings in said frame and permanently secured to the frame, sheet metal pole shoes having openings through which the other respective studs extend, the studs and pole shoes being permanently secured together and said pole shoes extending laterally from the pole piece, wire wound tightly about the pole pieces and confined between the pole shoes and the U-shape frame and an armature positioned between the pole shoes."

The defendant's horn or signaling device is a Chinese copy of plaintiff's patented structure, and therefore infringement of both patents cannot be denied, which leaves for consideration the question of validity. Defendant denies invention, but his imitation of the thing patented shows what he thinks of the patent. Kurtz v. Belle Hat Lining Co., Inc (C. C. A.) 280 Fed. 277.

The objects and main features of the plaintiff's invention in the patent No. 1,237,717 cannot be better set forth than in his own words:

"The main object is to increase the electrical efficiency of a two-pole motor, and at the same time to reduce its bulk by reducing the number of parts to such an extent as to allow the entire motor to be applied eccentrically to one end of a diaphragm case wholly within the area of the vibratory part thereof, and to allow the use of a central contact or abutment on the diaphragm for cooperative engagement by the motor-driven actuator. In other words, I have sought to produce a simple, light, and powerful motor horn at a considerably lower cost of manufacture than has heretofore been practiced, without sacrificing any of the advantages of this class of horns. * * *

"I have previously stated that one of the objects of the invention is to increase the electrical efficiency of the motor by making the field magnet in the form of a U-shape bar of cold rolled steel, while the pole pieces are preferably made of cast iron, but may be made of bar steel or other suitable magnetizable metal, separate from, but rigidly secured to, the opposite arms of the U-shape bar, so as to complete the field magnet of the motor. * * *

"The main feature of this invention, therefore, resides in the use of a U-shaped magnetic bar, embracing the armature with the feet of its opposite arms secured to one end of a diaphragm case, and its opposite end constituting a support for one end of the motor shaft, the latter having its opposite end journaled in the inner end of the diaphragm case and provided with an actuator and cooperating with a projection on the center of the diaphragm for imparting vibratory movement thereto."

The defendant offered in evidence many patents to show the prior state of the art. I have examined them carefully, and while I find in some of them separately formed pole pieces, and in some of them interiorly located commutator and brushes, in none of them have I been able to find any disclosure of "a narrow thin sheet metal strip bent in U-shape form and having its ends secured to the rear case section to form a U-shape motor case." This constitutes novelty.

Defendant seems to contend that the Grant patent, No. 931,416, dated August 17, 1909, in particular afforded suggestion in connection with the construction of the motor-driven horn described in the first patent in suit; but I am unable to agree with this claim, because the electric motor described in that patent disclosed a cylindrical motor field, and not a "narrow thin sheet metal strip bent in U-shape form and having its ends secured to the rear case section to form a U-shape motor case." Furthermore, this patent was for a toy motor, and I fail to see how it could afford any suggestion in connection with the building of a motor-driven horn, which required a much more substantial structure and greater operating power.

[2] Defendant also offered in evidence the two patents issued to Duncan A. McConnell, to wit, patent No. 1,160,902, dated November 16, 1915, and patent No. 1,228,226, dated May 29, 1917; but it does not seem to me that these patents are prior art against the plaintiff's patents in suit, as they were copending applications. The file wrapper of patent No. 1,160,902 was properly received in evidence to show prior invention, but the defense of prior invention could only be sustained by showing that the invention of the applications of McConnell and Sparks were the same.

This the defendant has not succeeded in doing, because, after two interferences, which were decided in favor of McConnell, and a third interference, which could not be prosecuted because McConnell's patent, No. 1,228,226, had already issued, and the Patent Office had no further jurisdiction, but with full knowledge the Patent Office granted the first patent in suit to the plaintiff, restricting its single claim, as shown in the first patent in suit.

The invention claimed in the Sparks patent is different from that shown in the McConnell patent, and therefore each was entitled to a patent on his application, and McConnell is not prior art as to Sparks. Sundh Electric Co. v. Interborough Rapid Transit Co., 198 Fed. 94, 117 C. C. A. 280. The claim of the patent in suit will not read upon the disclosure of the McConnell prior application, and therefore the inventions claimed by McConnell and Sparks, respectively, in their patents, are different, and the invention of McConnell cannot be part of the prior art as to Sparks.

Defendant contends that the motor frame in the Sparks structure functions no differently, and produces no new result, over the structures shown in the prior art. Considered solely from the point of view of operation, this may be so, but in making his invention Sparks was confronted with the problem of producing a horn which would adequately perform the service required, while at the same time reducing its weight and cost. That the reduction of the weight and cost of the

horn was a necessity is clearly shown by the fact that, prior to the time of Sparks' alleged invention in the first patent in suit, motor-driven horns were of small consideration on the market.

[3] Since the alleged invention of Sparks, motor-driven horns embodying the narrow thin sheet metal strip bent in U-shape occupy a commanding position on the market. This is convincing proof of its utility. That horns embodying the elements of the plaintiff's first patent in suit have come into general use and supplanted other devices used for a similar purpose is evidence of invention, in the absence of evidence to show that the success was due to any other causes than that of the merits of the device. Sherman-Clay & Co. v. Searchlight Horn Co., 214 Fed. 86, 130 C. C. A. 562.

The commercial success of the horn disclosed in the first patent in suit cannot be seriously questioned. No argument seems to be necessary to show the simplicity of the structure, as that is apparent, and was admitted by the defendant when on the stand.

Defendant insists that there was no invention in the first patent in suit, because all that was done was to substitute sheet metal in place of cast metal; but this does not seem to be a fair statement of what was accomplished in the first patent in suit.

[4] The substitution of the U-shape metal strip for the cast metal field so far changed the art of making motor-driven horns as to make valuable and bring into general use that which had before, because of its inherent faults of weight and high cost, been of comparatively little value, and this was not, in my judgment, merely an improvement but a real invention. It all looks very simple and easy at this time to have provided for the U-shape metal strip in place of the cast iron field; but, as appears by the testimony of Mr. Sparks, men skilled in the art did not believe it to be possible before it was accomplished, and this is evidence of novelty and invention. Diamond Rubber Co. v. Consol. Tire Co., 220 U. S. 428, 31 Sup. Ct. 444, 55 L. Ed. 527; Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177.

Defendant contends that the first patent in suit is invalid, because the present claim of the patent is for a subject-matter quite different from that of any of the original claims, and is not supported by the proper supplemental oath, or by any statutory oath. With this contention I cannot agree, because in my opinion the original oath covered everything described in the application as filed, and the applicant by his final amendment did not present a conception materially different from or enlarged over that shown by the original application, and therefore no supplemental oath is necessary. Camp Bros. & Co. v. Portable Wagon Dump & E. Co., 251 Fed. 603, 163 C. C. A. 597; Westinghouse E. & Mfg. Co. v. Metropolitan E. Mfg. Co. (C. C. A.) 290 Fed. 661.

I am therefore of the opinion that claim 1 of the first patent in suit is valid, and is infringed by the defendant.

[5] The objects of the plaintiff's second patent in suit, No. 1,355,283, and its novel features, are best stated in the patentee's own words:

"The main object of the invention is to produce an efficient motor of simple construction and light weight, at minimum expense for materials and labor; such a motor being peculiarly adapted for use in connection with electric horn or signal. The invention takes form in a device comprised en-

tirely of pressed metal, and is an improvement upon the construction shown, described, and claimed in my copending application, serial No. 765,792, patent No. 1,237,717, dated August 21, 1917.

"A marked improvement resides in the form and method of producing the pole pieces and field coils, the required number of ampere turns of wire in the field coils being obtained from a materially reduced quantity of wire. As an illustration, in signals of a predetermined size, each field coil has heretofore embodied approximately 78 feet of wire to obtain the required flux; whereas, in the present signal, the same number of ampere turns and the same flux, is obtained with approximately 37 feet of wire. This improvement may be effected by coiling the wire to form the field coils, directly about the pole pieces; the latter being preferably of substantially circular form and of relatively small diameter. * * *

"Instead of having field coils as independent articles of manufacture for mounting upon the pole pieces, the wire for forming the coils is wound about the enlarged portions 28 of studs 27 to constitute sufficient ampere turns, such coils 31 being circular in form and of relatively small diameter and confined between the platelike parts 30 and the side portions 12 and 13, respectively. The wire from which the field coils are formed may be covered with any suitable insulating composition or material."

It thus appears that the features of the second patent which are claimed to be novel are providing the pole shoes upon the face of the pole pieces, winding the wire, to constitute the field coils, directly upon the pole pieces, and securing the pole shoes to the pole pieces, and the pole pieces to the U-shape frame by riveting. Each of these features was old and well known to the art, and it seems to me that defendant properly claims that they do not constitute a new combination, entail a new function, or produce a new result, because no novel feature relied on to support the first patent in suit can again be relied on to support the second patent in suit. Underwood v. Gerber, 149 U. S. 224, 13 Sup. Ct. 854, 37 L. Ed. 710; Suffolk Co. v. Hayden, 3 Wall. 315, 18 L. Ed. 76; James v. Campbell, 104 U. S. 356, 26 L. Ed. 786; Mosler Safe Co. v. Mosler, 127 U. S. 354, 8 Sup. Ct. 1148, 32 L. Ed. 182.

There was no novelty or invention in securing the separate pole pieces to the U-shape frame in the second patent in suit by riveting, instead of by screws, as in the first patent in suit. The rivet as used in the second patent in suit was the mechanical equivalent of the screw used in the first patent in suit. Boss Mfg. Co. v. Thomas, 182 Fed. 811, 105 C. C. A. 243.

I do not believe that the first patent in suit shows square pole pieces in cross-section while those in the second patent in suit are round in cross-section, and that therefore the field coils could not be wound directly upon the square pole pieces of the first patent in suit, but could be wound upon the round pole pieces of the second patent in suit. On the contrary, I believe that the first patent in suit disclosed round pole pieces, and that there was no patentable novelty or invention in making them round in the second patent in suit.

I am unable to find that there is novelty in claim 1 of the second patent in suit, and, while I fully appreciate the presumption of invention that flows from the granting of a patent, I am unable to find anything but mechanical skill in claim 1 of the second patent in suit, when comparing it with the first patent in suit. I am therefore of the opinion that claim 1 of the second patent in suit is invalid.

A decree may be entered in favor of plaintiff against the defendant, as prayed for in the bill of complaint, on the single claim of the first patent in suit, No. 1,237,717, with costs, except that single and not treble damages are allowed, and an accounting will be ordered, if desired, and in favor of the defendant against the plaintiff, dismissing the bill of complaint as to claim 1 of the second patent in suit, No. 1,355,283, without costs.

Settle decree on notice.