## FULTON IRON WORKS CO. v. FARREL FOUNDRY & MACHINE CO.

District Court, D. Connecticut.   June 2, 1926.
No. 1788.

1. **Patents ⬗328—1,291,095, claims 1 and 2, for cane mill, held invalid for anticipation and lack of novelty.**

O'Neil patent, No. 1,291,095, claims 1 and 2, for cane mill having two precrushing rolls in combination with the juice-expressing rolls instead of one as in prior machines, *held* invalid for anticipation and lack of novelty, and also because patentee was not the original inventor, and not infringed if conceded validity.

2. **Patents ⬗24—Duplication of devices is not patentable.**

Duplication of devices has never involved anything patentable.

3. **Patents ⬗33—Where validity is doubtful, evidence of commercial success is admissible to add weight of public indorsement.**

The sole ground upon which commercial success is admissible is to add the weight of public indorsement, where validity is doubtful.

In Equity.   Suit by the Fulton Iron Works Company against the Farrel Foundry & Machine Company.   Decree for defendant.

Robert H. Parkinson, of Chicago, Ill., Howard G. Cook, of St. Louis, Mo., and George D. Seymour, of New Haven, Conn., for plaintiff.

Charles Neave, of New York City, and Henry E. Rockwell and Edmond M. Bartholow, both of New Haven, Conn., for defendant.

THOMAS, District Judge.   This is the usual bill in equity, based on an alleged infringement of claims 1 and 2 of patent No. 1,291,095, granted January 14, 1919, to John F. O'Neil, and later assigned to the plaintiff.

There is no controversy as to the corporate existence of the parties, nor as to the plaintiff's title to the patent, nor as to the structure of defendant's machine, as these matters have been covered by stipulation.

The invention relates to a cane mill for extracting or expressing the juice from sugar cane.   The object of the invention, as stated in the specification, is "to provide precrushing means whereby the capacity, juice extraction, and percentage of sugar yield from the cane of a cane mill may be greatly increased relative to the capacity of such mills as have heretofore been in use."

It appears from the record that at one time the equipment for acting on the cane consisted of only a single set of three rolls, which simultaneously crushed the cane and expressed the juice.   Then, in order to increase the capacity of the plant, duplication began, and one or more sets of rolls were added, thus making an equipment with a plurality of sets of rolls or mills in series or tandem.   This duplication not only increased the capacity of the plant, but secured a larger percentage of juice from the same quantity of cane.   As far back as 1891 the plaintiff began to put annular grooves in the rolls in each three-roll mill, and in mills made by the plaintiff not later than 1912 there were four sets of three-roll mills in tandem, which had coarser annular grooves in the first sets than in succeeding sets, and the rolls of each succeeding set were mounted so as to be closer together than the rolls of each next preceding set, because, some of the juice having been expressed as the cane was crushed in passing through one set of rolls, the volume of the mass gradually became diminished.   Ever since 1911 it has been customary to nick the longitudinal grooves on the top roll of the first mill to provide something akin to teeth, in order to more easily and rapidly draw the cane into the rolls.

While the so-called "mills" performed both a crushing and juice-expressing action, the idea was early developed that the capacity of the plant would be increased if toothed rolls were added in front of the three-roll mill to subject the cane to a preparatory crushing and shredding.   The Krajewski patent, No. 349,503, issued September 21, 1886, shows a pair of crushing rolls having teeth made in the roll by short zigzag grooves, mounted in front of and at a higher level than the three-roll mill.   The edges of the teeth are, as stated in the specification, "more or less sharp, so as to cut or to break only, and not to primarily act as pressing devices."   It thus clearly appears that these rolls were employed for the sole purpose of breaking or cutting the cane, so as to prepare it for delivery to the mill in more uniform thickness throughout the length of the rolls in order to reduce the work of the latter in pressing the cane.   This process allows the pressing rolls to be placed nearer together than ordinarily, and permits of greater pressure being exerted on the cane by the three-roll mill, resulting in the yield of a greater percentage of juice from the same quantity of cane.   The facts are well stated by Krajewski in his specification as follows:

"Sugar cane is generally crushed by two or more smooth-faced rollers, which receive cane in the same condition as it is gathered in the field.   It is impossible to space the cane so evenly throughout the length of the

rollers that a uniform thickness of it will enter between them; hence, generally, there will be a great quantity of cane at certain points and very little or possibly none at all at other points. Thus some portions of the cane will receive less pressure than others, and consequently much available juice is left in the cane. Rollers as ordinarily constructed have to break the cane as well as to express the juice, and hence it requires great power to do the work: This waste of power can be saved by the employment of a separate mechanism appropriate for the work of breaking or cutting the cane. I employ a separate mechanism for breaking or cutting the cane, so that it can be delivered to the mill in more uniform thickness throughout the length of the rollers, so as to reduce the work of the latter to pressing the cane. The pressing rollers can then be placed nearer together than ordinarily, and greater pressure exerted on the cane, resulting in a yielding of a greater percentage of juice."

The patent in suit describes a precrushing means, consisting of two or more sets of toothed precrushing rolls, arranged to receive the cane in advance of the juice-expressing rolls. The teeth of the precrushing rolls are smaller than the teeth of the next preceding precrushing rolls, and the precrushing rolls nearest the juice-expressing rolls are therefore more closely assembled or associated than the other sets of rolls. The several sets of precrushing rolls are separated from each other a suitable distance, and, as the mass of cane rides down an inclined runway, it passes through the second set of precrushing rolls, and a more complete crushing and shredding action takes place than that which is performed by the teeth of the primary precrushing rolls, and this action constantly tends to place the cane under strain while it is being shredded by the teeth of the several precrushing rolls.

[1] The claims of the patent in suit alleged to be infringed are as follows:

"1. The combination with juice-expressing rolls of a cane mill, of a plurality of sets of toothed precrushing rolls through which the cane is passed before delivery to the juice-expressing rolls, said sets of precrushing rolls being operable in a differentiating degree upon the cane to shred and open its cells before the cane reaches the juice-expressing rolls.

"2. The combination with juice-expressing rolls of a cane mill of two sets of toothed precrushing rolls arranged to receive the cane in advance of said juice-expressing rolls, the teeth of the precrushing rolls nearest said juice-expressing rolls being arranged to effect a twisting action upon the cane as it passes through said rolls."

The main defenses are:

(1) Invalidity of the claims in suit, because of (a) anticipation and lack of invention, in view of the prior practices and patents; (b) lack of originality, O'Neil having obtained his ideas from Dardis.

(2) Noninfringement, because the defendant's machine does not embody those characteristics which were inserted in the specification and claims by amendment and by reason of which the claims were allowed and issued.

1(a) Respecting anticipation and lack of invention, the record shows that it was an old and well-known practice, many years prior to the application date of the patent in suit, to mount a pair of precrushing rolls in front of the juice-expressing rolls; the said precrushing rolls being disposed at a higher level than the juice-expressing rolls, and being provided with teeth. As already appears, a construction of this type of machine is described in the Krajewski patent, supra. It was also a common practice, many years prior to the application date of the patent in suit, to adjust the openings between the rolls of a cane mill so that the opening between the rolls of each mill was smaller than the opening between the rolls of each mill next preceding in the series. It was also a well-known practice in the art to set the rolls of the single precrushing means further apart than the rolls of the first set of juice-expressing rolls.

Therefore the question that arises here, is whether the addition of a further set of precrushing rolls amounts to invention or whether it is merely mechanical skill. Of course, if the two sets of precrushing rolls co-operate one with the other, each set modifying the action of the other set, it may be that the inventive faculties have been called into action. If, however, each set of precrushing rolls works independently of the other, each performing its well-known function, without obtaining a new result, then the claims are unpatentable, because they amount to a mere duplication of what was shown in the prior art and what was known, and the alleged invention or discovery is obviously within the purview of the work of a mechanic skilled in this art.

[2] It is argued by the plaintiff that the invention defined by the claims in suit does not consist of a mere duplication or change in degree of what was old, but that it involves discovery of what had not been perceived before, viz.: That, by subjecting cane stalks to the

successive treatments effected by the two pairs of wedge-shaped intermeshing precrushing rollers, combined and operating in the manner recited, before the stalks passed through the mill rolls, great economy and efficiency was thereby attained. It is claimed by plaintiff that the two sets of precrushing rolls operate in a differentiating degree upon the cane. It appears from the record, however, that the differentiating action of claim 1 results solely from the fact that the rolls of the second pair of precrushing rolls are set nearer together than the rolls of the first pair. But this was a common practice in cane mills many years prior to applicant's invention. When the patentee placed an additional set of precrushing rolls on his machine, acting under the common practice, he made the opening there larger than between the precrushing rolls already on the machine, and the fact that he calls the action a differentiating action does not lend patentability to claim 1; there being no co-operation between the two pairs of precrushing rolls and no new result obtained. Each set of precrushing rolls works in the old and well-known way, so that the provision of two sets of precrushing rolls amounts to nothing else but duplication. Duplication of devices has never involved anything patentable. Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658; Dunbar v. Meyers, 94 U. S. 187, 194–196, 200, 24 L. Ed. 34; Troy Laundry Machinery Co. v. Rees (C. C. A.) 67 F. 336; Nathan Anklet Support Co. v. Cammeyer (C. C. A.) 264 F. 968, 971.

Claim 2 specifies that the teeth of the precrushing rolls nearest the juice-expressing rolls are arranged to produce a twisting action upon the cane as it passes through said rolls. This twisting action, however, also results solely from the fact that the rolls of the second pair of crushing rolls are set nearer together than the rolls of the first pair. No co-operation between the two sets of rolls and no new result were thus produced.

I am therefore constrained to hold that both claims are anticipated and lacking in novelty, in view of the prior practices and prior patents which are disclosed in this record.

1(b) The defendant further asserts that the claims in suit are invalid for lack of originality because the patentee obtained his ideas from one Dardis. The record shows that Dardis, an old sugar man, died in February, 1923. The witness Farrel talked with him in 1913, and Dardis at that time spoke to him about two sets of precrushing rolls. On May 21, 1913, Dardis wrote to the witness Bowen,

chief engineer of the defendant company, and said, inter alia:

"In my opinion, I would put 2 crushers in front of a mill, first, one with 2" opening and, second, one with as little opening as possible. * * * So I think it is perfectly logical and a good point to put 2 crushers with 9 rollers following."

And on January 23, 1914, Dardis again wrote Bowen and said:

"I am more than ever in favor of two crushers in front of a 9-roller mill. * * * You want to get busy on Mr. Ros and sell him a new mill and two crushers."

The date of each letter is manifestly prior to any date set up by the plaintiff, and the letters clearly indicate that Dardis was at that time in possession of the alleged invention in issue here. Of course, this would not invalidate the claims of the patent were it not for the question of originality which is presented here. It seems clear that the principle of the alleged invention was explained in 1913 to the witness Thomas, who some time later, but prior to the application date of the patent in suit, described the same to the patentee. I believe that a communication about the invention from Dardis to O'Neil has been satisfactorily shown, and that it has been full and clear as to all essential elements concerning it, and plaintiff has failed to rebut this testimony. I therefore hold that claims 1 and 2 of the patent in suit are invalid because the patentee is not the inventor of the improvements therein set forth.

### Infringement.

2. Even if the claims could be held valid, it must be held that defendant's machine does not infringe. Claim 1 calls for a plurality of sets of toothed precrushing rolls which are adapted to operate in a *differentiating degree* upon the cane. For a definition of that phrase, we turn to the specification of the patent, and from that we learn that, in order to obtain the action called for in claim 1, the cane must still be held between the first set of precrushing rolls as it passes through the second set of rolls. Such action could only take place if the second pair of rolls was revolving at a higher peripheral speed than the first set of rolls. It is stipulated that in defendant's device the second set of rolls revolves more slowly than the first. Therefore claim 1 is not infringed.

Claim 2 specifies two sets of toothed precrushing rolls in combination with juice-expressing rolls; the teeth of the precrushing rolls nearest the juice-expressing rolls being

arranged to effect a twisting action upon the cane as it passes through the last-mentioned precrushing rolls. The specification is silent as to what produces the twisting action upon the cane, nor is there any competent evidence in the record to show what brings about a twisting action in plaintiff's machine. In defendant's machine there is no twisting action according to the evidence adduced at trial. Therefore defendant's machine does not infringe claim 2.

[3] Plaintiff has shown that its equipment has met with favor and that large sales have been made. It is a well-settled rule, however, that the fact that a device has gone into such use has no weight upon the question of patentable novelty, except when it is in doubt. Commercial success will never sanctify a patent which is void. The sole ground upon which commercial success is admissible is to add the weight of public indorsement where validity is doubtful. Duer v. Corbin Cabinet Lock Co., 149 U. S. 216, 13 S. Ct. 850, 37 L. Ed. 707. When there is no invention, the extent of the use is a matter of no importance. Boss Mfg. Co. v. Thomas (C. C. A.) 182 F. 811.

Let the bill be dismissed with costs to defendant. Decree accordingly.