## DAVIS et al. v. A. H. REID CREAMERY & DAIRY SUPPLY CO

(Circuit Court, E. D. Pennsylvania. February 16, 1911.)

No. 353.

**1. PATENTS (§ 289*)—SUIT FOR INFRINGEMENT—LACHES.**

Mere delay in the bringing of a suit for infringement of a patent, where it was because of the inability of the owner to bear the expense of the litigation, is not such laches as will defeat the suit.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 467–469; Dec. Dig. § 289.*

Laches as a defense in suits for infringement, see notes to Taylor v. Sawyer Spindle Co., 22 C. C. A. 211; Richardson v. D. M. Osborne & Co., 36 C. C. A. 613.]

**2. CHAMPERTY AND MAINTENANCE (§ 4*)—CHAMPERTOUS CONTRACT—INFRINGEMENT SUIT—AGREEMENT BY LICENSEE TO ADVANCE COSTS.**

An agreement by a licensee under a patent to pay the expense of a suit for its infringement in the first instance, to be reimbursed therefor from the proceeds of the suit or by credit on royalties under its license, where the owners of the patent were without means to conduct the litigation, is not champertous.

[Ed. Note.—For other cases, see Champerty and Maintenance, Cent. Dig. §§ 4, 9, 11–19; Dec. Dig. § 4.*]

**3. PATENTS (§ 328*)—ANTICIPATION—CREAM SEPARATOR.**

The Davis patent, No. 521,104, for a centrifugal separator for liquids, is void for anticipation by the German patent to Schultz of 1890.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Equity. Suit by Daniel J. Davis, Stephen J. Davis, Alfred J. Davis, and the Empire Cream Separator Company for and on behalf of themselves and of the Industrial Construction Company against the A. H. Reid Creamery & Dairy Supply Company. Decree for defendant.

Wm. Houston Kenyon and Alan D. Kenyon, for complainants.

Robert Fletcher Rogers and Donald Campbell, for respondent.

HOLLAND, District Judge. This is a suit in equity for infringement of claim 1 of patent No. 521,104, dated June 5, 1894, issued to Daniel J. Davis, for a centrifugal separator for liquids.

The claim is as follows:

"In centrifugal separators for liquids, the combination with the drum having an elongated neck with an outlet therein, of the removable separating dome inclosed liquid tight but detachably by said neck beyond the outlet thereof and interspaced from the drum wall by a suitable stop whereby a free channel is established from the drum interior to the outlet at the neck substantially as described."

There is set up as matter of defense (1) that the claim in suit is invalid over the admitted prior art, and has been anticipated by a British patent issued to one Bergh in 1887, and a German patent issued to Schultz in 1890; (2) noninfringement; (3) that the complainants are guilty of laches in not enforcing their rights, if they ever had any, for a period of upward of 10 years; (4) that the Davises have entered into a champertous agreement with the Empire Cream Separator Company to pay the expense of suits for infringement, and to share in any recovery that may be had.

It will not be necessary to enter into an extended consideration of the defense of laches or of champertous agreement. The Davises give what seems to be a justifiable excuse for their delay in bringing suit for infringement, in that they were unable to raise sufficient funds to pay the expense of litigation, which, as well known, is usually very heavy in patent cases. We are unable to see any justice in permitting an infringer to defeat a right to recover in a plain case simply because the injured party has delayed the enforcement of his rights because of poverty; and the question of the complainants' financial inability to enforce his rights should also be considered in passing upon whether or not an arrangement or agreement with another to aid in the conduct of suits for infringement is champertous. Sufficient to say in this case that the agreement mentioned is not champertous, because, first, the suit on behalf of the Davises and their licensees does not depend upon nor proceed upon the agreement they made with the Empire Cream Separator Company in regard to the conduct of litigation. The Empire Cream Separator Company is a licensee under the agreement in question, and manufactures and sells the patent device, and is therefor damaged like any other licensee by the infringement, and directly interested in the restraining of the infringement. Burnes v. Scott, 117 U. S. 582, 6 Sup. Ct. 865, 29 L. Ed. 991; Call v. Calef, 13 Metc. (Mass.) 362. And, although the Empire Company is to bring suit for infringement at its own expense, in the first instance, it is to

be compensated out of money recovered, if any, and all moneys paid out by the Empire Company in such infringement suits are to be credited to it on royalty account, "the same as if said moneys were paid as royalty to the said Davises," so that the payment of the expense of litigation is simply a way of paying royalty, and the expense comes out of the three owners of the patent in the end. The Empire Company, lessee, would be interested in the restraint of any future infringement, and, under the circumstances, we think would have a right to make such an agreement as this to aid the owners to enforce their rights, who are unable to do so by reason of poverty, but who, by their agreement, contribute such an amount as their royalties, derived from their lessees, put into their possession. Muller v. Kelly, 116 Fed. 545; Call v. Calef, supra.

While we do not think that the agreement is champertous, or that a recovery is barred by reason of the complainants' delay, or the defense of noninfringement can be sustained, an examination of the proofs brings us to the conviction that the patent cannot be sustained over the Bergh and Schultz patents. Every feature of the claim in suit, together with the mode of operation and advantages, is present in the Bergh patent, with a single possible exception of the detachable connection. This latter feature is fully and clearly set forth, together with advantages, in the Schultz, German, patent, which is in every particular a full and complete anticipation of the invention as set forth in claim 1, both in terms and in substance. The functions, mode of operation, and results are identical. The improvement is for a centrifugal separator for liquids and for use in a dairy for the purpose of separating cream from the whole milk. The hand cream separator, as appears in evidence, is cylindrical in form, of different dimensions, varying from two to six inches in diameter and from four to ten inches in length. These cylindrical domes or bowls, as they are variously designated, are fashioned for use in a machine operated by hand, in which they are revolved at a high rate of speed from 6 to 25,000 revolutions a minute. The whole milk runs into the revolving machine in a steady stream (from 100 to 2,000 quarts per hour, according to the size and capacity), and, separated, the cream and skim milk flow separately and continuously from the machine in two steady streams; the thickness or richness of the cream depending upon the adjustment controlling the outlets. By suitable devices, such as radial wings within the revolving bowl, the full milk as it is fed into the bowl is compelled to partake of that rapid rotary motion. As a result of this rotation, the milk assumes the form of a hollow cylinder of liquid within the bowl; the position of the inner wall of the cylinder being determined by the position of the outlets of the bowl. By this rapid rotation there is created within the body of the revolving milk an intense centrifugal action which tends to separate the constituents of the full milk according to their relative specific gravity. The particles of dirt and of casein or cheese and of water being slightly heavier than the particles of butter fat that exist in the form of an emulsion in all milk, the former predominate in the positions farthest from the center and nearest to the periphery of the

bowl, and the latter, the butter fat particles, are crowded inwardly toward the center and predominate in the inner wall of the hollow liquid cylinder within the revolving bowl.

In a cream separator in operation, an instantaneous analysis or observation, if it could be made, along any given radial line in the revolving liquid in the bowl, would disclose a liquid rich in butter fat particles—that is to say, a thick cream—at the point nearest the center of rotation, and a liquid almost free from butter fat particles—this is to say, blue milk or skim milk—at the point farthest from the center of rotation, and a proportional distribution of butter fat particles at intervening points. The two outlets, the one for the skim milk and the other for the cream, are arranged near the axis of rotation, the one slightly farther out than the other, but not more than one-eighth or one-sixteenth of an inch farther out; the outlet nearer the center being the one that delivers the cream. With this arrangement of outlets, the inner wall of the cylinder of liquid within the bowl will stand slightly nearer the center of rotation than the inner or cream outlet, just as the water in a millpond will stand at a slightly higher level than the top of the dam. The adjustment of the relative distances of the cream and skim milk outlets from the center of rotation determines the thickness of the cream. If the radial distance between the two outlets is increased, the outer or skim milk outlet will carry off more proportionately of the water, and the cream will be thicker and richer. If the radial distance between the two outlets is diminished, more of the water will pass out with the cream, so that the cream will be thinner. The limits of adjustment are small and the effects of minute adjustments are large. The skim milk outlet cannot be much more than one-eighth of an inch farther out from the center than the cream outlet even in large machines, nor much less than one-sixteenth of an inch farther out even in small machines.

From what we have stated above, it will be apparent that whereas the cream outlet of one of these cream separators stands substantially at or in the cream zone of the bowl, just as the top of a dam stands substantially in the level of the top of the mill pond, the skim milk outlet does not stand in the skim milk zone of the bowl. The skim milk zone is at the periphery of the bowl. The skim milk outlet, on the other hand, must stand substantially in the cream zone, and there must be some sort of passageway from the skim milk zone to the skim milk outlet in the cream zone; and the Davis invention in issue is addressed to the problem of this passageway.

In the prior art bent tubes were used to connect this skim milk region of the bowl with the skim milk outlet. These were soldered inside the bowl and opened at one end in the skim milk region of the bowl and at the other end in the skim milk outlet. The soldered tubes conducted the separated skim milk from the skim milk region of the bowl inward toward the cream wall of the bowl and to the proper point, with respect to the cream outlet, and there discharged the skim milk outwardly through an outlet in the neck of the bowl. Ordinarily there were three of these small bent tubes in a single bowl, but sometimes as many as six.

There were certain difficulties connected with the manufacture of cream separators with these soldered bent tubes for the discharge of the skim milk and certain disadvantages in use, which the practical art long put up with for lack of a better device. These bowls having to be revolved at such high speeds in use have to be balanced with absolute accuracy so as to run true by the hour, else they will not run at all. The soldering of tubes in the interior of the bowl inevitably upset its balance, and the factory balancing of bowls having these soldered bent tubes for the discharge of the skim milk was an operation requiring time and expert labor and delicacy, so much so that, if one of these tubes became displaced or loosened in use, the separator became worthless at once, and had to be shipped back to the factory for resoldering of the tube and rebalancing of the bowl.

Another and greater objection to the use of soldered bent tubes was that they were difficult to clean, and could never be thoroughly cleaned nor sufficiently exposed to sunlight and air. The art of separating cream from milk is unique in its relation to the life and health of the community, and in the narrow margin that lies between cleanliness and health on the one hand, and dirt and putrefaction and the dissemination of disease on the other hand. And not only do the constituents in milk tend to sour and ferment and putrefy, but in the operation of centrifugal machines, sticky, nitrogenous substances, including casein, are separated out and lie on the periphery of the drum and on the surfaces of the skim milk passages, and especially in the angles and corners. A cream separator requires frequent cleaning, and a great desideratum in a cream separator is the capacity of being readily taken apart and thoroughly cleaned and readily and accurately put together again, and this by the ordinary farmer or farmer's boy, or wife, or girl, or farm hand, for they are the users of these devices. Many cream separators of the prior art could be readily taken apart and to a certain extent cleaned, but the bent skim milk tube part of the device was the point of weakness in that regard. Removable tubes were unimaginable from a practical standpoint because the farm hand could not possibly restore them to place without utterly destroying the balance of the bowl, which he would never be able to restore. And, moreover, even if removed, they would still be small bent tubes, the inner surfaces of which it was difficult to clean, and practically impossible to thoroughly and certainly clean. The skim milk passed on the inside of these bent tubes to the skim milk outlet, and the cream passed on the outside of these bent tubes to the cream outlet. Ordinarily, both of these outlets were in the neck of the bowl, one above the other, delivering, respectively, into two circular pans or receptacles, one above the other, that did not rotate, and out of which pans or receptacles the skim milk and the cream flowed by separate spouts. These soldered bent tubes kept separate and apart the skim milk and the cream, which the centrifugal action in the bowl had separated from each other; and the bent tubes kept the skim milk and the cream separate and apart while at the same time conducting the separated skim milk inwardly from the skim milk zone to the skim milk outlet in the cream zone, where it had to be con-

ducted in accordance with the necessary law of the machine in order to have the double discharge.

The invention in suit is addressed to this problem of the double delivery from the machine of the already separated ingredients of the full milk.

Davis substituted for the bent tubes of the prior art a dome or cone which constitutes the separating septum or wall between the discharging skim milk and cream, and, in conjunction with the drum itself and its neck, constitutes on the outside the passageway for the skim milk from the skim milk zone of the drum to the skim milk outlet, and on the inside the passageway for the cream to its outlet; and so combines this separating dome or cone with the drum and the drum neck that the dome or cone while securely held in place during centrifugal operation was readily detached for purposes of cleaning and as readily replaced in necessarily accurate and balanced relation for further centrifugal operation.

The essential elements of the combination are the revolving drum with an elongated neck, having in such neck an outlet for the skim milk, and a separating dome or cone inclosed and held within the drum and its neck but removable or detachable therefrom, and a suitable stop or stops interspacing the separating dome or cone from the drum and its neck in such a way as to establish a free channel from the skim milk zone of the drum interior to the skim milk outlet in the neck of the drum.

He claims to have devised a combination which dispensed with the small tubes previously employed in the art with their objectionable fixedness and cross-currents, and supplied a device that could be disassembled to the last degree, and especially so disassembled as to lay the skim milk discharge passageway open and exposed as to all its inner faces, and at the same time permit easy reassembling, and compel absolutely accurate reassembling, without the slightest deviation from the original nice balance of the machine attained in the factory.

This statement of the operation of a cream separator and the claim of the complainants is taken from the brief prepared by complainants' counsel, and it is not only an accurate statement of the operation of the device, but a correct claim for the complainants' alleged invention. The difficulty, however, is that it is a reproduction of what was previously patented to Bergh and Schultz. The Bergh patent dispensed with the objectionable tubes, and substituted the dome as a means of leading the skim milk from the skim milk zone to the skim milk outlet. There are in the Bergh patent the drum, the neck, and the dome, adjusted in the same relation to each other, and for the same purposes as they are in the Davis patent. The only difference is the detachable connection of the dome in the Davis patent by means of a screw. In the Bergh device the dome is soldered to the neck of the drum, rendering it, of course, impossible to separate them for the purpose of cleansing. In that particular, it is very evident the Bergh patent is as objectionable as the use of tubes found in the prior art. Neither could be cleaned with any degree of certainty that all

the impure matter had been destroyed, and neither could be exposed to the sunlight and air, but this defect was supplied by Schultz in the German patent. In brief, the Schultz patent refers to the use of a dome instead of the small pipes ordinarily used for the purpose of conducting the skim milk from the skim milk zone to the skim milk outlet, and also refers to the fact that, by reason of the detachable connection of the dome, the important object of cleansing the parts is facilitated, which, as stated in the specifications, was so difficult in the earlier art. It is further stated that:

"The cleaning of the drum after use thereof is effected by means of unscrewing or loosening the screw nuts and separating the drum into its constituent parts."

The essential elements of the German patent are the same as in the Davis patent, to wit, the drum, its neck, and the dome. The combination and their relation to each other are the same in both patents, and the functions, mode of operation, and results are identical. The dome is detachably connected in both devices; the only difference being that the patent in suit shows a threaded connection between the drum and the dome, while the German patent shows a simple slip or sliding joint between the parts.

The German patent is a complete anticipation of the invention, both in terms and in substance. While the Bergh patent was cited in the Patent Office at the time the patent in suit was obtained and the applicant required to modify his original claims, it does not appear that the German patent was discovered by the examiner, and consequently was not considered. We conclude that the patent is invalid because of the complete anticipation by this German patent. In the construction of the defendant's centrifugal separator, the drum, the neck, and the dome are used in the same combination and for the same purpose as those found in the Davis and the Schultz patents. The defendant, however, uses a detachably connected dome by means of a simple slip or sliding joint as used in the German patent.

Let a decree be entered dismissing the bill, at the costs of the complainants.