SHERMAN–CLAY & CO. v. SEARCHLIGHT HORN CO.

(Circuit Court of Appeals, Ninth Circuit. May 4, 1914.)

No. 2,306.

1. PATENTS (§ 274*)—ACTION FOR INFRINGEMENT—EVIDENCE.

In an action at law for infringement of a patent for a horn for phonographs and similar machines, where the claims in suit described the invention as a horn larger at one end than at the other, and tapered in the usual manner, composed of longitudinally arranged strips, tapered from one end to the other, and secured together at their edges, and the outer side thereof at the points where such strips are secured together being provided with longitudinal ribs, substantially as shown and described, it was not error to permit the jury to take into consideration the configuration and shape of the horn as shown in the specification, and drawings showing it to be an operative device.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 419–421; Dec. Dig. § 274.*]

2. PATENTS (§ 276*)—ACTION FOR INFRINGEMENT—INSTRUCTIONS.

An instruction, in an action for infringement, that "in a doubtful case, if it appears by the evidence that the patented device has gone into general use and has superseded prior devices having the same purpose, that fact is sufficient evidence of invention" held not erroneous, where the evidence showed without contradiction that the device of the patent at once superseded all prior devices for the same purpose in the market, and there was no evidence to show that its success was due to any other cause than its merits.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 240, 432–434; Dec. Dig. § 276.*]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—HORN FOR TALKING MACHINES.

The questions of the validity and infringement of the Nielsen patent, No. 771,441, for a horn for phonographs or similar machines, as against the defenses of anticipation, lack of invention, and noninfringement, held properly submitted to the jury and by proper instructions in an action for its infringement, and a verdict for plaintiff held supported by the evidence.

In Error to the District Court of the United States for the Second Division of the Northern District of California; William C. Van Fleet, Judge.

Action by the Searchlight Horn Company against Sherman-Clay & Co., a corporation, for infringement of letters patent No. 771,441, for a horn for phonographs or similar machines granted to Peter C. Nielsen October 4, 1904. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 214 Fed. 99.

On April 14, 1904, one Peter C. Nielsen, a resident of Greenport, in the county of Kings, state of New York, filed in the United States Patent Office his application for a patent for certain new and useful improvements in horns for phonographs or similar machines. The object of the invention, as set forth in the specification, was to provide a horn for machines of the class designated, which would do away with the mechanical, vibratory, and metallic sound usually produced in the operation of such machines, and also produce a full, even, and continuous volume of sound in which the articulation would be clear, full, and distinct. Accompanying the specification, and form-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ing a part thereof, were filed drawings on which were delineated the separate parts of the improvement for which patent was sought. A sketch of the drawings filed with the specification is hereto attached.

The specification described a horn, a, provided at its smaller end with a nozzle-piece, a2, by means of which connection was made with the machine. In the form of construction shown in the drawings a supplemental piece, a3, was employed between the larger or body portion of the horn and the nozzle-piece; but it was stated in the specification that the parts a3 and a2 might be formed integrally. The main or body part of the horn, a, was bell-shaped in form and tapered outwardly gradually from the part a3 to the larger or mouth end, a4, and this curve or taper was greater or more abrupt adjacent to the larger or mouth end. The body portion of the horn was composed of a plurality of longitudinal strips, b, which were gradually tapered from one end to the other, and which were connected longitudinally so as to form the longitudinal ribs b2. Each of the strips b was provided at its opposite edges with a flange, b3, and these flanges of the separate strips b were connected to form the ribs b2. The strips b forming the body portion of the horn were made of sheet metal, and when placed together the strips were so arranged that the body portion of the horn, in cross section, was made up of a plurality of short lines forming substantially a circle. In the language of the specification, it was the construction of the body portion of the horn, as shown on the drawings, that gave to the horn the qualities which it was the object of the invention to produce, those qualities being the result of the formation of the body portion of the horn by the longitudinal strips b, providing the outer surface thereof with the longitudinal ribs b2, and curving the body portion of the horn in the manner described. It was the longitudinal ribs b2 which, in the opinion of the applicant, contributed mostly to the successful operation of the horn; the ribs serving to do away with the vibratory character of horns of that class as usually made, and doing away with the metallic sound produced in the operation thereof. The specification also provided that changes in and modifications of the construction described might be made without departing from the spirit of the invention, or sacrificing its advantages.

The claims of the invention for which patent was sought were as follows:

"1. A horn for phonographs and similar machines, the body portion of which is composed of longitudinally-arranged strips of metal provided at their edges with longitudinal outwardly-directed flanges, whereby said strips are connected, and whereby the body portion of the horn is provided on the outside thereof with longitudinally-arranged ribs, substantially as shown and described.

"2. A horn for phonographs and similar machines, the body portion of which is composed of longitudinally-arranged strips of metal provided at their

ᵤdges with longitudinal outwardly-directed flanges whereby said strips are connected, and whereby the body portion of the horn is provided on the outside thereof with longitudinally-arranged ribs; said strips being tapered from one end of said horn to the other, substantially as shown and described.

"3. A horn for phonographs and similar machines, said horn being tapered in the usual manner, and the body thereof on the outside thereof being provided with longitudinally-arranged ribs, substantially as shown and described."

It appears from the file-wrapper that claim No. 3, as above set forth, was rejected by the Examiner of Patents, the Examiner holding that it would not constitute patentable invention to provide a horn with longitudinal ribs, in view of the transverse ribs of patent No. 181,159, for a toy blow horn, issued to C. W. Fallows on August 15, 1876, and the longitudinal rib of English patent No. 20,557, for an improvement for phonographs, issued to John Mesny· Tourtel by the British government on August 20, 1903.

The application was thereupon amended by the applicant by inserting the following claim, which was numbered 4:

"4. A horn for phonographs and similar machines, said horn being tapered in the usual manner and the body thereof on the outer side thereof being provided with longitudinally-arranged ribs between which the longitudinal parts of the horn taper from one end to the other, substantially as shown and described."

In a letter forwarded to the Patent Office with the above amendment, it was stated by the solicitors for the applicant that the references cited by the examiner did not show a horn for talking machines having longitudinally-arranged ribs on the outer side thereof; that the invention of C. W. Fallows showed spirally-arranged ribs, but that this in no sense anticipated the applicant's invention; that such an arrangement of the ribs would make the horn vibrate more, and cause more of a metallic sound than if no ribs. at all were formed on it; and that it was the longitudinally-arranged ribs on· the outer side of the horn which produced the result claimed by the applicant.

The amendment numbered 4 was also rejected by the Examiner of Patents; the Examiner stating that the applicant's horn as described in claims 3 and 4 was considered the equivalent of a part of a patent for an audiphone issued to J. Clayton on October 18, 1898.

Prior to the rejection of claim No. 4, the following supplemental amendment, numbered 5, was forwarded to the patent office by the applicant:

"5. A horn for phonographs and similar instruments, said horn being larger at one end than at the other, and being composed of longitudinal-tapered strips which are secured together at their edges, substantially as shown and described."

Subsequently the following amendment, numbered 6, was added:

"6. A horn for phonographs and similar instruments, said horn being larger at one end than at the other, and tapered in the usual manner, said horn being composed of longitudinally-arranged strips secured together at their edges, and the outer side thereof at the points where said strips are secured together being provided with longitudinal ribs, substantially as shown and described."

In a communication forwarded to the Patent Office by the solicitors for the applicant, together with the amendment numbered 6, it was stated that the Clayton patent had been carefully considered, that no similarity therein to the applicant's device, either in construction or operation, could be seen; that the object of the applicant's construction was to destroy the vibratory character of a phonographic horn, and that this could not be done by corrugating the horn, as all forms of corrugations increase the vibration instead of diminishing it.

In reply to the last-mentioned letter, the Examiner of Patents stated that it was believed that it could not constitute a patentable invention to provide any horn with longitudinal stiffening ribs to render the horn perhaps less vibratory. The claims numbered 3, 4, and 5 were therefore held to be devoid of patentable novelty and invention, in view of the prior art as exhibited by the patents cited, together with a patent for a horn for sound recording and producing apparatus, issued to G. Osten and W. P. Spaulding, on July 22, 1902. The claim numbered 6 was allowed, and was inserted in the specification as claim No. 3; the claims as allowed then reading as follows:

"1. A horn for phonographs and similar machines, the body portion of which is composed of longitudinally-arranged strips of metal provided at their edges with longitudinal outwardly-directed flanges whereby said strips are connected, and whereby the body portion of the horn is provided on the outside thereof with longitudinally-arranged ribs, substantially as shown and described.

"2. A horn for phonographs and similar machines, the body portion of which is composed of longitudinally arranged strips of metal provided at their edges with longitudinal outwardly-directed flanges whereby said strips are connected and whereby the body portion of the horn is provided on the outside thereof with longitudinally-arranged ribs; said strips being tapered from one end of said horn to the other, substantially as shown and described.

"3. A horn for phonographs and similar instruments, said horn being larger at one end than at the other and tapered in the usual manner, said horn being composed of longitudinally-arranged strips secured together at their edges, and the outer side thereof at the points where said strips are secured together being provided with longitudinal ribs, substantially as shown and described."

On October 4, 1904, a patent was duly and regularly issued by the Commissioner of Patents, covering the invention of the applicant as described in the three claims last set forth. On February 5, 1905, the patentee sold, transferred, and assigned all of his right, title, and interest in and to the patent so issued to him to one Christian Krabbe. The patent was subsequently assigned by Krabbe to the United States Horn Company, a corporation, and on January 4, 1907, the last-named corporation assigned all of its right, title, and interest in and to the patent to the plaintiff herein, the Searchlight Horn Company, a corporation organized and existing under and by virtue of the laws of the state of New York.

The defendant, Sherman-Clay & Co., is a corporation organized and existing under and by virtue of the laws of the state of California, and it was alleged in the declaration filed by the plaintiff that the defendant had, since the 4th day of January, 1907, continuously used and sold from day to day horns for phonographs containing and embracing the inventions described, claimed, and patented in and by the letters patent issued to Nielsen by the United States of America on October 4, 1904, without the license or consent of the plaintiff; that the horns used and sold by the defendant were known as "Victor Phonographic Horns," and were made according to the specification of the letters patent issued to Nielsen, and constituted an infringement upon each and all of the claims therein contained. In the answer filed by the defendant all of the allegations of the declaration were denied. The action was tried before a jury. At the trial of the case the plaintiff abandoned the claim numbered 1 of the specification, electing to rely upon the claims numbered 2 and 3. At the close of the testimony, the defendant moved the court to direct the jury to find a verdict in its favor, the motion being based on the grounds: First, that claims 2 and 3 of the patent in suit were void for want of patentable invention; and, second, that neither of the claims had been infringed by the defendant. The motion for a directed verdict was denied. A verdict was rendered in favor of the plaintiff, and damages against the defendant were assessed by the jury at the sum of $3,578. Judgment was entered against the defendant for the amount of $3,578, but subsequently the plaintiff voluntarily remitted all of the judgment, with the exception of $1, and an amended judgment was thereupon entered for the latter amount. From the judgment entered against the defendant in the court below, a writ of error has been prosecuted to this court.

Nicholas A. Acker and J. J. Scrivner, both of San Francisco, Cal., and Horace Pettit, of Philadelphia, Pa., for plaintiff in error.

John H. Miller and Wm. K. White, both of San Francisco, Cal., for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.   •

MORROW, Circuit Judge (after stating the facts as above). 1. The first question to be determined is the scope of the invention involv-

ed in this case. In the application of Nielsen for a patent he set forth that he had invented certain new and useful improvements in horns for phonographs or similar machines, and that the object of his invention was to—

"do away with the mechanical, vibratory, and metallic sound usually produced in the operation of such machines, and also produce a full, even, and continuous volume of sound in which the articulation is clear, full, and distinct."

He described his improvement in the usual specification and drawings, from which it appears that the horn is provided at the smaller end with a nozzle piece, by means of which connection is made with the phonograph or other machine. A supplemental piece is employed to connect the nozzle piece with the larger or body portion of the horn, but these parts may be formed integrally. This larger or body portion of the horn is bell-shaped in form, and tapers outwardly gradually from the supplemental piece to the larger or mouth end of the horn. The curve or taper of the horn is greater or more abrupt adjacent to the larger or mouth end of the horn. The body portion of the horn is described as composed of a plurality of longitudinal strips gradually tapered from one end to the other, and connected longitudinally so as to form longitudinal ribs, each of the strips being provided at its opposite edges with flanges, and these flanges of the separate strips being connected to form the ribs. The strips are composed of sheet metal, and the inner wall of the body portion of the horn is made up, in cross section, of short lines forming substantially a circle. It is in the construction of this body portion of the horn that Nielsen's alleged improvement is located, and which it is claimed gives to the horn the qualities which it is the object of the invention to produce. More specifically it is declared that the improvement consists in forming the horn, or the body portion thereof, of longitudinal strips and providing the outer surface of the horn with longitudinal ribs, and curving the body portion of the horn in the manner described. It is declared further that it is the longitudinal ribs which contribute mostly to the successful operation of the horn, the ribs serving to do away with the vibratory character of horns of this class as usually made, and doing away with the metallic sound produced in the operation thereof. The claims of the patent are as follows:

"1. A horn for phonographs and similar machines, the body portion of which is composed of longitudinally-arranged strips of metal provided at their edges with longitudinal outwardly-directed flanges whereby said strips are connected, and whereby the body portion of the horn is provided on the outside thereof with longitudinally-arranged ribs, substantially as shown and described.

"2. A horn for phonographs and similar machines, the body portion of which is composed of longitudinally-arranged strips of metal provided at their edges with longitudinal outwardly-directed flanges whereby said strips are connected, and whereby the body portion of the horn is provided on the outside thereof with longitudinally-arranged ribs, said strips being tapered from one end of said horn to the other, substantially as shown and described.

"3. A horn for phonographs and similar instruments, said horn being larger at one end than at the other and tapered in the usual manner, said horn being composed of longitudinally-arranged strips secured together at their edges, and the outer side thereof at the points where said strips are secured to-

gether being provided with longitudinal ribs, substantially as shown and described."

In the Patent Office, in support of a proposed amendment to a pending claim, it was contended by the attorneys for Nielsen that it was "the longitudinally-arranged ribs on the outer side of the horn that produced the result claimed by applicant." We find accordingly "longitudinally-arranged strips" an element in each of the three claims of the patent. In claims 1 and 2, these "longitudinally-arranged strips" form on the outside of the horn "longitudinally arranged ribs" and in claim 3 "longitudinal ribs." The other elements claimed by Nielsen are: In claims 1 and 2 these strips are of "metal." In claim 3 the word "metal" is omitted. In claims 1 and 2 these strips are "provided at their edges with longitudinal outwardly directed flanges, whereby said strips are connected, and whereby the body portion of the horn is provided on the outside thereof with longitudinal ribs." In claim 3 the strips are "secured together at their edges" (outwardly directed flanges omitted), "and the outer side thereof, at the points where said strips are secured together, being provided with longitudinal ribs." In claims 1 and 3 the shape of the strips is not given. In claim 2 they are described as "said strips being tapered from one end of said horn to the other," and in claim 3 the horn is described as "being larger at one end than at the other and tapered in the usual manner."

The essential differences between claims 1, 2 and 3 are therefore: In claims 1 and 2 the strips are of "metal"; in claim 3 they are not required to be of "metal." In claim 1 the "strips of metal" are not "tapered from one end of said horn to the other" as in claim 2, and in claim 1 the horn is not "larger at one end than at the other," as in claim 3, and is not "tapered in the usual manner" as in claim 3. In claims 1 and 2 the "strips of metal" are provided at their edges "with outwardly-directed flanges." In claim 3 they are "secured together at their edges."

In claims 1 and 2 the "metal strips" are connected together by means of the "longitudinal outwardly-directed flanges," and, being so connected, the body of the horn is "provided on the outside thereof with longitudinally-arranged ribs." In claim 3 the "longitudinally-arranged ribs" are "secured together at their edges, and the outer side thereof * * * where said strips are secured together being provided with longitudinal ribs."

This comparison of the various elements of the claims identifies the essential element of the improvement as the "longitudinally-arranged strips," providing the horn on the outside thereof with "longitudinally-arranged ribs." By dropping claim 1, we find that the strips are tapered from one end of the horn to the other, and the horn is larger at one end than at the other and tapered in the usual manner.

The case was tried before the court and a jury. The attorney for the plaintiff, in his opening statement to the jury, described the Nielsen horn, and said "it was of a shape with a large, flaring mouth"; that the horn was made "into sections shaped like a bell, so that it has a big, broad, flaring mouth." Upon the cross-examination of the first witness introduced by the plaintiff, the court inquired about the claims

of the patent, and wanted to know what they were. The attorney for the plaintiff announced that they relied upon claims 2 and 3, thus eliminating claim 1, and placing the case upon the elements contained in claims 2 and 3. These elements, as has already been stated, described a horn larger at one end than at the other and tapered in the usual manner, and composed of longitudinally-arranged strips, tapered from one end of the horn to the other, these longitudinally arranged strips providing the horn on the outside thereof with longitudinally-arranged ribs. The specification and the accompanying drawings showed a horn, bell-shaped in form, tapering outwardly from the smaller end to the larger or mouth end; the curve or taper at the larger or mouth end being greater or more abrupt adjacent to the larger or mouth end.

[1] It is objected that an improvement of the form or shape here described is not contained in either of the claims, and is therefore no part of the Nielsen invention. The statute (section 4888 of the Revised Statutes [1]) requires that an applicant for a patent "shall" in his application "particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery." It has accordingly been held that the courts have no right to enlarge a patent beyond the scope of its claim as allowed by the Patent Office. Keystone Bridge Co. v. Phœnix Iron Works, 95 U. S. 274, 278, 24 L. Ed. 344. But in Seymour v. Osborne, 11 Wall. 516, 547 (20 L. Ed. 33) it was held that:

"Where the claim immediately follows the description of the invention, it may be construed in connection with the explanations contained in the specifications; and, where it contains words referring back to the specifications, it cannot properly be construed in any other way."

In McCarty v. Lehigh Valley Railroad Co., 160 U. S. 110, 116, 16 Sup. Ct. 240, 242 (40 L. Ed. 358) it was held that reference may be had to the specification and drawings for the purpose of "showing the connection in which a device is used, and proving that it is an operative device." In the light of these and other decisions that might be cited, we see no reason why the court should not refer to the specification and drawings for the construction of the elements of the claims relating to a horn composed of "strips tapered from one end of the horn to the other" and a horn "larger at one end than the other, and tapered in the usual manner," and, when so construed, we find the device operative in the form constructed. But there is a further reason why this objection cannot prevail. No objection was made to the opening statement of plaintiff's attorney describing the shape of the horn as shown by the specification and drawings, and no objection was made to the introduction of testimony and exhibits showing the construction of such a horn, and no objection was made to that part of the instructions of the court to the jury wherein the shape of the horn as described in and shown by the specification and drawings was stated by the court to be part of the Nielsen invention and covered by the claims of the patent.

[3] 2. It is next contended by the plaintiff in error that the patent issued to Nielsen was void for lack of invention. There is a presumption of novelty that always attends the grant of a patent, and the burden of proof is always on the defendant to establish its want of novel-

[1] U. S. Comp. St. 1901, p. 3383.

ty.  Singer v. Brill, 54 Fed. 380, 4 C. C. A. 374.  The testimony at the trial of this case tended to show that at the date of the issuance of the patent to Nielsen, and prior thereto, horns for phonographs and similar machines most commonly used were constructed of a single piece of tin, cut in the general shape of a triangle, and folded or bent around a form until the longitudinal edges met; these edges being fastened together by what was known in the tin smith art as a lock seam.  The lock seam was made by bending portions of the metal outwardly along the longitudinal edges, thus forming flanges, one of which was made longer than the other.  The longer flange was then bent down over the shorter.  The interlocked flanges thus formed were then flattened down upon themselves and upon the body of the horn, forming a rib or seam on the outside thereof.  The essential differences between a horn such as that just described, which the testimony tended to show was in general use at the time of the issuance of the patent to Nielsen, and a horn such as that described in and shown upon the specification and drawings of that patent are very obvious.  The patent of Nielsen described a horn composed of a plurality of strips of metal, joined together along their longitudinal edges by means of outwardly directed flanges.  In the horns in use at the date of the Nielsen patent the angle assumed by the tapering sides remained the same throughout the entire length of the horn.  In the Nielsen horn the strips of metal, as has already been explained, were so shaped that when joined together the form assumed by the horn was that of a bell, or, as designated by the inventor, a flower.  Whether this construction of the Nielsen horn constituted invention was a question of fact for the jury, and which the court submitted to the jury with appropriate instructions.

[2] It is contended, however, that the following instruction was error:

"No  *  *  *  exact definition can readily be given you of what constitutes invention as distinguished from mere mechanical skill; but there is one established principle or rule which can be easily understood and followed in determining that question whenever the facts of the case make it applicable. That rule is that in a doubtful case, if it appears by the evidence that the patented device has gone into general use and has superseded prior devices having the same purpose, that fact is sufficient evidence of invention, and will justify a jury in deciding that the patent involves invention and is valid.

"If you find, therefore, that this is a doubtful case on the question of invention, and that after Nielsen's horn became known it went into general use and superseded the prior devices having the same purpose and theretofore used, you will be justified in giving effect to those facts in accordance with the rule pointed out, by finding that the device involved invention."

It is conceded by the plaintiff in error that where a device has gone into general use and has superseded all other devices having the same purpose, the fact is persuasive evidence of invention, and where that question is in doubt, the court might so instruct the jury.  But it is contended that when the court instructed the jury that it was sufficient evidence of invention, the court was in error.  The instruction must be considered with reference to the evidence to which it relates.  Witnesses on behalf of the plaintiff had testified that after the Nielsen flower horns were introduced to the market everybody used them on their machines; that they were bought by everybody, by agents, by the dry

goods stores, by the department stores and everybody. Everybody wanted them. Nobody wanted the old-style horns. There was no evidence tending to show that this extensive use of the Nielsen horns was due to any other cause than that of merit of the device; there was no evidence of greater business efforts or advertising in bringing the horns to the attention of the public. This fact taken in connection with the evidence of general and extensive use, was admittedly persuasive evidence, and, if persuasive, it must have been sufficient under all the circumstances.

In Morton v. Llewellyn, 164 Fed. 692, 697, 90 C. C. A. 514, 518, this court said:

"Apart from the presumption of novelty that always attends the grant of a patent, the law is that where it is shown that a patented device has gone into general use, and has superseded prior devices having the same purpose, it is sufficient evidence of invention in a doubtful case."

[3] The giving of the other instructions on the subject of lack of invention is not assigned as error. We conclude, therefore, on this branch of the case, that the motion of the defendant, made at the close of the testimony, that the jury be directed to find a verdict in its favor upon the ground that the claims of the patent were void for want of patentable invention was properly denied. The whole question, under the testimony, was for the jury, and it was clearly and accurately submitted to them under the instructions given.

3. It is next contended that the court should have directed the jury to return a verdict in favor of the defendant for the reason that the patent was void on the ground of anticipation. In support of this contention, the defendant introduced in evidence patents issued by the United States of America, and also by the British government, for a lamp shade, a speaking trumpet, a toy blow horn, a sheet metal pipe, a ship ventilator, and various other articles having a general outline similar to that of a horn for phonographs. The very obvious objection to these patents as tending to prove that the patent issued to Nielsen for phonograph horns was void for anticipation is that they were all for articles other than phonograph horns, and consequently qualities claimed by Nielsen to be resultant in a phonograph horn by reason of the arrangement of strips of metal in a certain manner, and fastened together in a specified way, would be entirely lacking in any other instrument or article formed in any manner whatsoever. We shall not, therefore, attempt to set forth the distinguishing features of, or draw comparisons between, the horn for phonographs and similar machines patented by the letters issued to Nielsen, and the articles described in the various American and British patents introduced in evidence. Such procedure would serve no useful purpose, nor would it assist us in any degree to a solution of any of the questions arising on this appeal.

There was, however, introduced in evidence a patent issued by the Patent Office of the United States on September 29, 1903, to one G. H. Villy, for a horn for phonographs, ear trumpets, etc., and it is this patent on which the defendant strongly relies in support of its contention that the patent issued to Nielsen should have been held void for

anticipation. The object of the Villy patent, as set forth in the specification, was to provide a horn or trumpet like device which could be folded when not in use, so as to be capable of ready transportation, and which could be placed within the case of the phonograph, or in the pocket of the user, when it was to be applied to an ear instrument, or the like. The horn was to be made of a series of strips of paper, wood, linen, or other preferably flexible material, and there was to be a hinge-like connection between each of the strips. In substance, the claims of the patent were for a collapsible but self-sustained phonograph horn, ear trumpet, or the like, composed of a number of flexible strips having curved meeting edges and flexible connections between such edges. In brief, the great object of the Villy patent was a horn made of strips of flexible material joined by means of flexible connections at the edges in such manner that the whole would be collapsible. There was not involved in the Villy patent, as in the horn described in the Nielsen patent, the problem of preventing tintinnabulation or metallic resonance; and, indeed, in a horn composed of strips of paper, wood, linen, or other flexible material, such as Villy proposed to use in the structure of his horn, no precautions against tintinnabulation would, in the nature of things, have been necessary. In the material of which the strips were to be made, in the method by which they were to be joined, and in the primary object to be attained, the Villy and the Nielsen horns were vastly dissimilar. The Villy horn was made of strips of paper, wood, linen, or other flexible material; the Nielsen horn was made of strips of metal. The strips of the Villy horn were joined at their edges with flexible connections; the strips of the Nielsen horn were connected at their edges by means of longitudinal outwardly-directed flanges, forming a solid rib or seam on the outside of the horn. The primary object sought in the Villy horn was that it might be collapsible; the great object of the Nielsen horn was the prevention of metallic resonance or tintinnabulation. In no sense, as we view it, can the horn described in the Villy patent be deemed an anticipation of the horn described in the patent issued to Nielsen. Experts called at the trial of the case testified that the two horns were dissimilar in formation and in principle.

In this connection we may notice an error assigned relating to the refusal of the court to admit in evidence a reissue of the Villy patent dated January 30, 1906. The plaintiff in error offered the reissued patent in evidence at the trial. The defendant in error objected on the ground that it was not prior to the patent in suit; that is to say, the patent in suit is dated October 4, 1904, and the reissued Villy patent is dated January 30, 1906, and that the latter could have no effect in construing the prior patent to Nielsen. No satisfactory answer was made to this objection in the court below. The objection was accordingly sustained, and the reissued patent excluded. This patent is not in the record, and we are not able to form any opinion as to its elements. It appears that the United States Horn Company, the predecessor in interest of the defendant in error, purchased the original Villy patent, and thereafter, contending that broader claims should have been allowed, applied for and obtained a reissue of the patent. It is con-

tended that it was important that the reissued patent should have been admitted in evidence for a number of reasons, among others that the defendant in error had marked its horns with the Villy reissued patent of January 30, 1906, and also with the Nielsen patent in suit; thereby admitting, it is contended, that the Nielsen horn was constructed under the Villy reissued patent, as well as under the Nielsen patent, and that the reissued patent was the connecting link between the original Villy patent and the Nielsen patent. What merit there is in these contentions we are unable to determine from the record before us, but, giving to the statement of the plaintiff in error full credit for all that is claimed for the reissued patent, we do not see how it was material or relevant to any issue before the court.

4. The failure of the court below to give to the jury certain instructions requested by the defendant on the subject of anticipation is assigned as error. We have carefully examined the instructions given by the court, and we find that they include, in substance, all of the instructions asked for by the defendant. We find no error in the statement of the law therein contained, and, in fact, none of the assignments of error are based upon the instructions on the subject of anticipation as given by the court.

5. The next question is that of infringement. The horns for phonographs, as at first manufactured by Nielsen under the patent issued to him, and later for a short period by his assignees, were composed of metal strips joined together along their longitudinal edges by means of outwardly directed flanges, as described in the specification and shown in the drawings thereto annexed. This method of connecting the strips consisted in bending portions of the metal outward along the longitudinal edges, at a right angle to the body portion of the strip of metal. The two outstanding flanges thus formed were then placed together and held securely and rigidly in place by means of solder. But it appears from the testimony that shortly after the United States Horn Company, one of the successors in interest of Nielsen, acquired title to the patent, they found the above method of joining the strips of metal to be very expensive, and, in order to make the cost price of the horns as low as possible, they substituted for the method of joining the strips by means of soldered flanges the method known in the art of tin smithing as a lock seam, made, as we have heretofore stated, by bending portions of the metal outward along the longitudinal edges, thus forming flanges, one of which was made longer than the other. The longer flange was then bent down over the shorter, and the interlocked flanges thus formed were bent down upon themselves and upon the body of the horn, forming a rib or seam on the outside thereof.

The horns sold by the defendant, and which were claimed by the plaintiff to be an infringement of the patent granted to Nielsen, were formed by metal strips of precisely the same shape as those employed in the Nielsen horn, and, when placed together, formed a horn having precisely the same outline as the horn described in the Nielsen patent. But in the horns alleged to be infringements of the Nielsen patent, the metal strips were connected by means of the lock seam. It is not contended by the defendant that their horns differed in any respect what-

ever from the Nielsen horns, save and except in the manner of joining together the strips of metal of which they were composed. And it is this difference in the method of joining the strips which the defendant relies upon in support of its contention that the horns which it was charged with having sold do not constitute an infringement of the Nielsen patent. The answer of the plaintiff to this contention is that the lock seam, as a means of joining two strips of metal employed in the construction of a phonograph horn, is the mechanical equivalent of longitudinal outwardly-directed flanges, and that both methods of joining the strips answer the same purpose and accomplish the same result in substantially the same manner.

There was testimony tending to support each of these contentions. Baldwin Vale, a patent expert called on behalf of the plaintiff, testified that a lock seam such as that used in the horns sold by the defendant would correct or minimize the tintinnabulation or vibratory disposition of the strips just as the flanges described in the patent in suit; that any horn having a thickening of metal in the longitudinal seam between the strips of tin accomplished the formation of a rib for the purpose of removing the vibratory and mechanical sound from the horn. This witness also testified that the clause in the specification that changes in and modifications of the construction described might be made without departing from the spirit of the invention or sacrificing its advantages covered means for destroying mechanical noise and vibration equivalent to the means described in the specification and shown on the drawings. On the other hand, William H. Smyth, an expert called by the defendant, testified that in his opinion there was no such problem as taking care of vibrations of metal in the construction of phonograph horns, and that such a problem never existed. In this condition of the testimony we are of opinion that the action of the trial judge in denying the motion of the defendant for a directed verdict on the ground that the claims of the Nielsen patent had not been infringed by the defendant was without error, and that the instructions requested by the defendant, in substance, to the effect that the lock seam employed in the horns sold by them was not a mechanical equivalent of the flange used in the Nielsen horn, and constituted no infringement thereof, were properly refused. The whole question of infringement was left to the jury, and they were instructed on that subject as follows:

"The defendant contends that, even if the Nielsen patent is valid, the defendant has not infringed upon any of its claims, and in that behalf it is pointed out and relied upon by the defendant that the metal strips constituting the plaintiff's horn are secured together by a seam or joint known as a flanged or butt seam. The difference between those seams has been explained to you by the witnesses. Now, while it is true that the drawings of the Nielsen patent show only flanged or butt seams, and not the lock seam specifically, and while it is true that the specification described only the flanged seam, nevertheless it is urged by the plaintiff that the lock seam is the mechanical equivalent of the flanged or butt seam, and was known as such mechanical equivalent in the tinsmith art long prior to the time when Nielsen made his invention. Now, if you are satisfied from the evidence that the lock seam is the mechanical equivalent of the flange or butt seam as a seam and strengthening rib, then the fact that the defendant has substituted and used the lock seam will not be sufficient to disprove infringement of the Nielsen patent;

214 F.—7.

and in this connection I charge you that in patent law two things are mechanical equivalents when they both accomplish substantially the same results in substantially the same manner, although they may differ somewhat in form and details of construction. The law does not require a patentee to put into his patent all the different forms in which his invention may be embodied. He is required to illustrate in his patent only one form, which must be the best form in which he has contemplated embodying his invention, and, after he has done that, then the patent covers other forms which are the mechanical equivalent of the one shown in the patent. And, furthermore, in this connection, you have a right to consider the clause in the Nielsen patent, that is: 'Changes in and modifications of the construction described may be made without departing from the spirit of my invention or sacrificing its advantages.' If, therefore, you find that at the date of Nielsen's invention the lock seam was a mechanical equivalent of the flanged or butt seam in the sheet metal art, and that they both accomplish the same result in substantially the same manner as a seam and rib when used in phonograph horns, then you must find that the two things are mechanical equivalents, and that the defendant is not relieved from the change of infringement merely because its horns use the lock seam instead of the flanged or butt seam."

In the instructions requested by the defendant on the subject of infringement, the refusal to give which is assigned as error, there were set forth the several amended claims sought to be included in the application for patent filed by Nielsen, and which were rejected by the Patent Office. In and by the requested instructions, the jury was informed that Nielsen was limited by the Patent Office in the construction of his horn to the identical method of joining the strips of metal shown in the drawings and described in the specification; and the jury was virtually required, if it found that the means of joining the strips employed by the defendant differed in any respect whatsoever from the means of joining the strips described in the specification and shown on the drawings of the Nielsen patent, to render a verdict for the defendant. Obviously, the giving of such instructions would have been error, for by them the whole doctrine of mechanical equivalents, which, under well-established rules, pertains and attaches to all inventions, would have been taken from the jury, and it would have been directed as to the verdict which it should return on one of the important questions arising in the case, the determination of which, in the light of the conflicting testimony, was clearly and solely within its province. We think the instructions were properly refused.

The other errors assigned do not, in our opinion, call for discussion. We have carefully considered them all; and, finding no reversible error, the judgment of the court below is affirmed.