COLUMBIA GRAPHOPHONE CO. v. SEARCHLIGHT HORN CO.*

(Circuit Court of Appeals, Ninth Circuit.   September 5, 1916.)

No. 2759.

1. PATENTS ⬦148—INFRINGEMENT—ESTOPPEL.

Where the holder of two patents for the same subject-matter procured a reissue of the earlier one, and defendant, who infringed the second one, in no wise changed its position, such reissue did not operate to estop the holder of the patent from denying that all rights under the second patent passed and became merged in the reissued patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 200, 221, 222; Dec. Dig. ⬦148.]

2. PATENTS ⬦82—INFRINGEMENT—ESTOPPEL.

That complainant, the owner of two patents for phonograph horns, asserted that one of them was the first patent in the field and dominated the art, does not, where defendant in no wise changed its position, operate as an abandonment of rights under the second patent, estopping it from enjoining defendant's infringement thereof.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 105–107; Dec. Dig. ⬦82.]

3. PATENTS ⬦328—VALIDITY—ANTICIPATION.

The Nielsen patent, No. 771,441, for a flower-shaped phonograph horn, the body being composed of longitudinally arranged strips of metal, provided at their edges with longitudinal outwardly directed flanges, whereby the strips were connected, the body portion of the horn being provided on the outside with longitudinally arranged ribs, held not anticipated by the Gersdorff patent, No. 453,798, for an improved funnel, which was constructed in a somewhat similar manner at the point where the body connected with the nozzle, but was intended to fulfill a different purpose; the mode of construction of the horn being to prevent tintinnabulation by decreasing vibration, while the construction of the funnel was to render it easily cleaned.

4. PATENTS ⬦162—INFRINGEMENT—ESTOPPEL.

That complainant, before acquiring the patent which it claimed was infringed, gave it a narrow construction, does not estop complainant from asserting a broader construction after acquisition and claiming defendant's infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 237; Dec. Dig. ⬦162.]

5. APPEAL AND ERROR ⬦1009(2)—REVIEW—FINDINGS.

A finding by the trial court will be deferred to on appeal, where the evidence does not convincingly point to a different conclusion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3971; Dec. Dig. ⬦1009(2).]

6. PATENTS ⬦289—INFRINGEMENT—ACQUIESCENCE.

Though complainant's predecessor, the owner of the patent infringed, did not take steps to enjoin infringement on being informed by defendant that it would continue to manufacture devices which had been pointed out to them as infringing, yet as defendant did not in any way change its position, complainant is not thereunder estopped from enjoining future, and recovering for past, infringement; complainant's predecessor having

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied October 9, 1916.

delayed proceedings because of insufficient funds to carry on a costly litigation.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 467–469; Dec. Dig. ☾289.]

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Suit by the Searchlight Horn Company, a corporation, against the Columbia Graphophone Company, a corporation. From an interlocutory decree for complainant, defendant appeals. Affirmed.

The appellant appeals from an interlocutory decree in a suit upon letters patent, No. 771,441, issued October 4, 1904, to Peter Nielsen, for a phonograph horn. The court below found that Nielsen was the original and first inventor of the invention described in the letters patent; that the said letters patent are good and valid as to claims 2 and 3 thereof, as to which infringement was alleged; that the invention covered by those claims is of value and utility; that within six years prior to the commencement of the suit the appellant infringed said claims by selling horns for phonographs containing and embodying the invention described therein. Thereupon the court enjoined the appellant from making, using, or selling any horn containing the invention described in said claims, and referred the case to a master to take an accounting of the profits received by the appellant and to assess the damages sustained by the appellee by reason of the infringement. The said claims are as follows:

"2. A horn for phonographs and similar machines, the body portion of which is composed of longitudinally arranged strips of metal provided at their edges with longitudinal outwardy directed flanges whereby said strips are connected and whereby the body portion of the horn is provided on the outside thereof with longitudinally arranged ribs, said strips being tapered from one end of said horn to the other, substantially as shown and described.

"3. A horn for phonographs and similar instruments, said horn being larger at one end than at the other, and tapered in the usual manner, said horn being composed of longitudinally arranged strips secured together at their edges and the outer side thereof at the points where said strips are secured together being provided with longitudinal ribs, substantially as shown and described."

C. A. L. Massie, of New York City, and Charles E. Townsend and Arne Hoisholt, both of San Francisco, Cal., for appellant.

John H. Miller, of San Francisco, Cal., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The appellant contends that claims 2 and 3 were anticipated by the prior art, that they represent no patentable invention and have no patentable utility or novelty, that the court below erred in finding that the appellant had infringed said claims, and that the said court erred in not sustaining the appellant's plea of laches. The patent here involved has several times been before this court in controversies with parties other than the appellant here. Sherman Clay & Co. v. Searchlight Horn Co., 214 Fed. 86, 130 C. C. A. 562, and Id., 214 Fed. 99, 130 C. C. A. 575; Pacific Phonograph Co. v. Searchlight Horn Co., 214 Fed. 257, 130 C. C. A. 627. The first of those cases was brought here upon a writ of error after a jury had found a verdict sustaining the

validity of the patent and finding its infringement. It is said, however, that the present case presents new parties and new defenses, sustained by new evidence. The new defenses are said to be the estoppel of the appellee by virtue of its attitude toward the Villy reissue patent, and its declarations concerning the same, the double use of the Gersdorff patent, and the laches of the appellee. The new evidence is said to refute the theory of the Nielsen horn's advantage in overcoming the tintinnabulation and avoiding the vibratory features of other horns and the metallic sound produced thereby.

[1, 2] The Villy patent, No. 739,954, issued on September 29, 1903, was for a folding horn made in tapering sections, and in general shape it was similar to the horn in suit. On February 24, 1905, the appellee's predecessor in interest, the United States Horn Company, acquired the Nielsen patent, and soon thereafter acquired the Villy patent. On October 26, 1905, the United States Horn Company applied for a reissue of the Villy patent, and on January 30, 1906, reissue letters patent, No. 12,442, were granted. On January 4, 1906, the appellee purchased from the United States Horn Company both the Nielsen and the Villy reissue patents. It is urged that the fact that the United States Horn Company applied for and obtained the Villy reissue patent, while owning the Nielsen patent, had the effect to transfer to the Villy patent all credit for the subject-matter defined by the claims of the Nielsen patent, and to estop the appellee, the assignee of the United States Horn Company, from asserting the contrary.

Estoppel is also claimed from the fact that the appellee, after acquiring the Nielsen patent, issued a circular in which it said, "All of the so-called flower horns made by our aforesaid competitors are flagrant infringements of said patents" (that is, of the Villy reissue patent and the Nielsen patent), and the fact that the appellee affixed to the metal horns which it sold the patent dates of both those patents, and in a letter asserted the Villy folding horn to be "acoustically the most perfect horn," and in another letter asserted that "the Nielsen patent and the Villy reissue patent are the earliest flower horn patents." We are unable to discover in any of these features of the evidence ground of estoppel against the appellee. The statement that all other flower horns were flagrant infringements of the two patents which the appellee owned may fairly be interpreted as meaning that some of the competing horns infringed one and some infringed another of the two patents. The statement that the Villy horn was acoustically the most perfect horn may have been true, and yet that fact could have no bearing upon the appellee's right to maintain the present suit; and the statement that the Nielsen patent and the Villy reissue patent are the earliest flower horn patents contains no element of estoppel.

The final answer to all these alleged matters of estoppel is that it is not shown that the appellant at any time relied upon any of the said statements, or was misled thereby, or acted thereon to its disadvantage or otherwise. Nor can the acts and declarations of the appellee or its predecessors in interest be construed as an abandonment

or relinquishment to the public of any of the features of the Nielsen patent. It would have been no defense to the appellant if, indeed, the appellee had, as the appellant claims, asserted that Villy's was the first patent for a "flower" horn, that it was a patent for a metal horn, and that it, rather than Nielsen's, dominated the art. That attitude of the appellee to its patents, if proven, would not have affected its rights in the present suit, in the absence of a showing that the appellant was misled or injured thereby.

[3] We find no merit in the contention that the appellee's patent is anticipated by the patent to Gersdorff, of June 9, 1891, No. 453,798. That was a patent for an improved funnel, the claims of which had to do only with certain attachments, a strainer and a ventilating device. For the purpose of constructing the funnel so that it could be easily cleaned, it was made preferably without a transverse joint at the juncture of the body thereof with the nozzle, but was made slightly tapering at that point, and this result was attained by making the funnel of three longitudinal parts, the sections being united along their side edges by bending the same to form flanges and interlocking and soldering the flanges together, "thus forming longitudinal seams"; but in the nozzle, which was triangular in shape, the sections were united by soldering, instead of interlocking, thus forming continuous smooth seams. In other words, the inventor adopted the best available means for attaching together the three pieces of metal which formed the funnel. Above the nozzle, where a smooth surface was unimportant, they were fastened together in the simplest method known to the tinner's art, while in the nozzle, in which it was desired to secure a smooth surface, the joints were soldered. There was nothing in all this to suggest the Nielsen phonograph horn, the central thought of the inventor of which was to produce by means of exterior ribs a resistance to vibration, which it was believed, and as witnesses maintain, interfered with the transmission of sound from the phonograph.

[4] Also without merit is the contention that the appellee should be denied an injunction because of its former attitude toward a certain horn called in the record the "parabolic" horn, which it was selling before it purchased the Nielsen patent. That was a knock-down horn, made in four sections, fastened together by screws, so that it could be taken apart and its pieces packed away. When the parts were assembled the horn was fluted and flower-shaped, and bore some resemblance to the Nielsen horn, with the exception that the longitudinal strips were not tapered outwardly only, but were tapered both inwardly and outwardly. The fact that the appellee placed this horn on the market, claiming it to be different from any other horn, may, indeed, as the appellant contends, serve to show the very limited construction which the appellee placed upon the Nielsen patent before it bought it. But if the appellee entertained that opinion at that time, it is not thereby estopped to present to the court at this time its view of the extent and scope of the Nielsen patent.

[5] The appellant in its answer alleged that the patent in suit is

without utility, and that a horn constructed in conformity therewith presents no acoustical advantage whatever over the ordinary and well-known horns of the same dimensions. Much testimony was adduced to sustain that defense. There was also much testimony to the contrary—testimony tending to prove that the Nielsen horn would do away with the mechanical, vibratory, metallic sound usually produced in the operation of such machines. The decree of the court below comes to us supported by the finding of that court that the invention protected by claims 2 and 3 is of "value and utility," which means that the court below found against the appellant on the particular defense so pleaded. While it may be true, as the appellant contends, that the marked success and general use of the Nielsen horn is owing to its graceful shape and artistic appearance, rather than to any acoustical advantage which it possesses, the evidence does not convincingly point to that conclusion, and therefore, under the well-settled rule, we are not justified in disturbing the finding of the court below.

[6] In the answer it was alleged that the appellant had purchased from others all the horns it had dealt in; that prior to 1906, and continuously ever since, Hawthorne & Shebele and other metal manufacturers had openly and notoriously made and sold such horns; that the appellant, together with the Victor Company and the Edison Company, had openly and notoriously used and sold the same; and that the appellee and its predecessor in interest, who had full knowledge of said acts, made no protest, except that in 1906, the appellee's predecessor notified Hawthorne & Shebele and the Victor Company that they had infringed, to which they replied that the patent was invalid, and that they would continue their manufacture. The answer alleged that, in view of those facts, the appellant had been led to believe, and was justified in believing, that its vendors had the right to manufacture said horns and sell the same, and that, relying on the conduct of the appellee and its predecessor in interest, and their acquiescence in the said acts of others, the appellant was induced to expend large sums of money in acquiring for the benefit of its customers the horns understood now to be complained of. Wherefore the appellant alleged that the maintenance of the present suit is contrary to equity and good conscience. In brief, the answer alleged that because the appellee knew of the alleged infringement, and, when the appellant and others refused to desist from infringement, it failed to bring a suit to enjoin further infringement, and because the appellant continued to buy and sell infringing horns, the present suit is barred by the appellee's laches.

Other than the fact that the appellant continued to buy and sell the horns, and continued to deny the validity of the appellee's patent, there is no evidence in the case that the appellant relied upon the conduct of the appellee and its predecessor in interest, or was thereby induced to expend money, to its injury, or to change its position for the worse. It does not follow, from the allegation that the appellant expended large sums of money in buying horns which it sold to its customers, that the horns were not sold to customers at such a price

as to yield a profit to the appellant, even after it shall have paid royalties thereon to the appellee. There is nothing in the defense so pleaded which requires consideration, except the question whether the delay in bringing the suit amounts to laches which should bar the appellee. It was stipulated between the parties hereto that within six years prior to the commencement of this suit the appellant sold the horns which were alleged to infringe the appellee's patent, and it was in evidence that as early as 1906 the appellee's predecessor in interest notified the appellant and the manufacturers named in the answer of their claim that their rights in the Nielsen horn were being infringed, and that all of those companies so notified denied the infringement and denied the validity of the Nielsen patent, and said that the owners of the patent "would have to go to the courts before any particular one would stop making the horn." There was evidence, and it was not controverted, that the appellee's predecessors were without the necessary funds to commence litigation, that the expense of litigation would have been very great, and that it was not until April, 1910, that they placed the matter in the hands of an attorney, who brought the first suit early in 1911. In short, large and powerful manufacturers were infringing the device, and the owner of the patent was without funds to carry on an expensive litigation. But the owner's delay was accompanied by no act to induce the appellant to believe that its infringement was acquiesced in, and by no act amounting to estoppel. The bare fact that the appellant and others, with full knowledge of the appellee's claim, trespassed with impunity on the rights of the appellee for years, is no defense to a suit for an injunction and an accounting for the trespasses. Taylor v. Sawyer Spindle Co., 75 Fed. 301, 22 C. C. A. 203; Ide v. Trorlicht, Duncker & Renard Carpet Co., 115 Fed. 137, 53 C. C. A. 341; Empire Cream Separator Co. v. Sears, Roebuck & Co. (C. C.) 157 Fed. 238; Valvona-Marchiony Co. v. Marchiony (D. C.) 207 Fed. 386; Davis v. A. H. Reid Creamery & Dairy Supply Co. (C. C.) 187 Fed. 157; Benthall Mach. Co. v. National Mach. Corporation (D. C.) 222 Fed. 918; Drum v. Turner, 219 Fed. 188, 135 C. C. A. 74.

We find no error. The decree is affirmed.